[No. 27676. *En Banc.* April 3, 1941.]

THE STATE OF WASHINGTON, *on the Relation of Washing-ton Mutual Savings Bank, Appellant,* v. THE CITY OF BELLINGHAM *et al., Respondents and Cross-appellants.*[1]

[1]Reported in 111 P. (2d) 781.

234

*Tanner & Garvin,* for appellant.

*Hobart S. Dawson* and *Tim Healy,* for respondents and cross-appellants.

*John A. Homer, John Keeran, Charles R. Lewis, William Stuart, William J. Gilbert, Thomas L. O'Leary, W. V. Wells, H. E. Grimm, Eugene S. Avey,* and *Martin C. Welsh, amici curiae.*

BEALS, J.—Washington Mutual Savings Bank, a corporation, relator herein, instituted this proceeding before the superior court for Whatcom county, asking for a writ of mandate directed to the city of Bellingham, a municipal corporation, B. E. Hanning, as mayor of the city, J. E. McGinnis, as city treasurer, and Harry Binzer, as city comptroller, requiring them to issue warrants in favor of relator, drawn upon the city's local improvement guaranty fund, in payment of defaulted local improvement bonds and defaulted interest coupons on such bonds, all owned by relator. Two causes of action were stated, the first based upon matured and defaulted interest coupons issued by the city, attached to bonds of local improvement district No. 873, and the second upon matured and defaulted bonds, together with interest coupons attached thereto, issued by the city in connection with local improvement district No. 814. In each cause of action, the refusal of the city officials to issue warrants was alleged.

District No. 873 was created and the improvement ordered August 3, 1926. The improvement in connection with district No. 814 was ordered September 1, 1925, its bonds having been issued September 14, 1926.

The first cause of action presents the question of the extent of the guaranty afforded by Laws of 1925, Ex. Ses., chapter 183, p. 551, as to local improvement bonds issued for an improvement ordered subsequent to April 7, 1926, but prior to June 8, 1927, while the second cause of action presents the question of the operation and extent of the legal guaranty for bonds issued subsequent to April 7, 1926, for a local improvement ordered prior to that date.

Respondents filed separate demurrers to the two causes of action. The court overruled respondents' demurrer to the first cause of action, and sustained the demurrer to the second cause of action. Both parties

elected to stand upon their respective pleadings, and judgment was entered directing the issuance of a peremptory writ of mandate requiring the issuance of warrants in relator's favor for the amount of the defaulted interest coupons, as prayed for in the first cause of action (district No. 873), and denying the issuance of a writ and dismissing relator's second cause of action (district No. 814). Relator has appealed from the judgment dismissing its second cause of action, and respondents appealed from the judgment granting the writ as prayed for in the first cause of action.

In this opinion the relator below will be referred to as appellant, and the respondents in the superior court as respondents.

■ The question presented on appellant's appeal from the judgment dismissing its second cause of action, based upon bonds issued for the improvement of district No. 814, that improvement having been ordered prior to April 7, 1926, the bonds having been issued subsequent to that date, has been determined adversely to appellant's contention in the case of *Longview Co. v. Lynn*, 6 Wn. (2d) 507, 108 P. (2d) 365, and the trial court did not err in sustaining respondents' demurrer to appellant's second cause of action.

The question then to be determined is the extent of the guaranty which secures appellant's local improvement bonds issued by district No. 873, which bonds were issued to pay for an improvement ordered subsequent to April 7, 1926, and prior to June 8, 1927. Respondents contend that the bonds last referred to are guaranteed only by a single tax credit of five per cent of bonds or warrants issued, while appellant apparently contends that these bonds are secured by an annual tax credit not exceeding (in any one year) five per cent of the bonds or warrants issued and then outstanding.

Appellant filed its complaint herein before the superior court April 11, 1939, and speaking as of that date, the following facts, as alleged, stand admitted:

Local improvement district No. 873, providing for the improvement of certain streets in the city of Bellingham, was created by the city council by an ordinance passed August 2, 1926, and approved by the mayor the following day. Pursuant to the ordinance, the improvement was made, and local improvement bonds in the amount of twenty-six thousand dollars were issued and sold. Appellant is now the owner of these bonds to the aggregate par value of nine thousand seven hundred dollars. The city of Bellingham had not availed itself of the privilege of creating a local improvement district guaranty fund pursuant either to Laws of 1917, chapter 138, p. 576 (Rem. Rev. Stat., § 8986 [P. C. § 1066] *et seq.*), or Laws of 1923, chapter 141, p. 454, its guaranty fund having been first set up under Laws of 1925, Ex. Ses., chapter 183, and of course maintained after June 8, 1927, as provided by Laws of 1927, chapter 209, p. 308 (Rem. Rev. Stat., § 9351-1 [P. C. § 1071-1] *et seq.*).

Between April 7, 1926 (the effective date of the guaranty fund act of 1925), and June 8, 1927 (the effective date of the act of 1927), the city of Bellingham issued local improvement bonds and warrants in the aggregate sum of $650,529.60, of which amount $351,-670.55 (including the bonds of district No. 873) was issued on account of local improvements ordered subsequent to April 7, 1926, the balance having been issued on account of improvements ordered prior to that date. Subsequent to April 7, 1926, the city issued warrants on its local improvement guaranty fund for the purchase by the fund of defaulted local improvement bonds issued between April 7, 1926, and June 8, 1927, together with defaulted interest coupons, in the

aggregate sum of $34,745.76. These warrants were paid by a tax levy equal to five per cent of the total amount of bonds issued between the dates mentioned and some other, revenues which augmented the fund.

After June 8, 1927, the city has issued local improvement bonds on account of local improvements ordered subsequent to that date, in the aggregate sum of $302,400. The outstanding obligations of local improvement districts on account of local improvement bonds issued subsequent to April 7, 1926, exceed in the aggregate $195,125, of which bonds approximately one-third in amount were issued on account of improvements ordered prior to April 7, 1926, one-third represent improvements ordered subsequent to April 7, 1926, and prior to June 8, 1927, and one-third represent improvements ordered subsequent to June 8, 1927. Of bonds issued subsequent to April 7, 1926, and prior to June 8, 1927, for improvements ordered between those dates, in which class are the bonds of district No. 873, bonds in the aggregate amount of $4,343 have matured and remain unpaid, for which guaranty fund warrants have been demanded and refused. As alleged in the complaint, the entire bond issue of district No. 873 would mature July 5, 1939, appellant basing its first cause of action upon unpaid interest coupons which matured July 5, 1938.

Respondents contend that the amount which the city has already raised and paid into the guaranty fund by a tax levy equal in amount to five per cent of the local improvement bonds and warrants issued between April 7, 1926, and June 8, 1927, is the maximum tax which the city can be required to levy pursuant to Laws of 1925, Ex. Ses., chapter 183, and that such bonds and warrants are not in any way protected by Laws of 1927, chapter 209. On the other hand, appellant contends that the acts of 1925 and 1927, above referred

to, provide for a single continuing guaranty fund, for the benefit of which the city is required to levy taxes annually, when necessary, in an amount not exceeding an annual levy of five per cent of the bonds and warrants issued and outstanding, to purchase defaulted bonds and warrants presented.

The parties have also argued the question of whether the act of 1927 applies to bonds issued in connection with an improvement ordered subsequent to April 7, 1926, and prior to June 8, 1927, the effective date of the 1927 act.

Laws of 1917, chapter 138, accorded cities of the first class authority to create a fund for the purpose of guaranteeing, to the extent of the fund and as provided in the act, bonds of local improvement districts. The title of this act reads as follows:

"An Act authorizing cities of the first class to create a fund with which to guarantee the payment of bonds issued against local improvement districts."

Laws of 1923, chapter 141, extended the privilege to "every city and town." The title of this act reads as follows:

"An Act relating to local improvements and providing for the maintenance in cities and towns of local improvement guaranty funds."

The statute did not refer to the prior enactment, both statutes merely according to certain classes of municipal corporations the right to set up the guaranty funds provided, if the municipalities desired to do so.

By Laws of 1925, Ex. Ses., chapter 183, the act of 1923 was amended, each city and town in the state being required thereby to establish

" . . . a fund for the purpose of guaranteeing, to the extent of such fund and in the manner hereinafter provided, the payment of its local improvement bonds and warrants issued to pay for any local improvement

ordered subsequent to the effective date of this act:
. . ."

By a proviso, certain cities of the first class were exempted from the operation of the act. The pertinent portion of §§ 2 and 3 of the act, p. 552, reads as follows:

"Section 2. Such fund shall be designated 'Local Improvement Guaranty Fund.' For the purpose of maintaining such fund every city or town issuing local improvement bonds or warrants after April 7, 1926, shall be deemed and held to have pledged to the fund a tax credit of the city or town in an amount equal to five per cent of the bonds or warrants so issued. The credit so pledged shall not constitute an indebtedness of the city or town within the meaning of any statutory or charter provisions or limitation respecting indebtedness. Such pledge shall be deemed to have been made, as to any particular local improvement district, upon the delivery of the roll to the treasurer of the city or town for collection. Such pledged tax credits, with the other resources of the fund enumerated in section 3 hereof, shall constitute a reserve wherewith to purchase defaulted bonds and warrants guaranteed by the fund. As among the several issues of bonds or warrants guaranteed by the fund no preference shall exist, but defaulted interest coupons, bonds and warrants shall be purchased out of the fund in the order of their presentation."

"Section 3. After the creation of such guaranty fund, the city or town shall levy, from time to time, as other taxes are levied, such sums as may be needed to meet the financial requirements of the fund, but not in excess of the total of the tax credits pledged by this act to the guaranty fund. . . . Warrants drawing interest at a rate not to exceed six per cent shall be issued, as other warrants are issued by the city or town, against a guaranty fund to meet any liability accruing against it; and at the time of making its annual budget and tax levy the city or town shall provide for the levying of a sum sufficient, with the other resources of the fund, to pay warrants so issued during the preceding fiscal year: *Provided* That no war-

rants shall be issued against the guaranty fund in excess of the cash therein and the tax credits pledged thereto as provided in section 2 of this act: *Provided further,* That no taxes shall be levied for the fund in excess of the tax credits so pledged by section 2 hereof, and that the tax levies herein directed shall be additional to and if need be in excess of any and all statutory and charter limitations applicable to the tax levies of any city or town affected by this act."

The title to Laws of 1927, chapter 209, reads as follows:

"An Act relating to local improvements and bonds issued therefor and amending sections 1, 2, 3, 4 and 5 of chapter 141 of the 1923 Session Laws of Washington and repealing section 6 thereof."

This act again amended Laws of 1923, chapter 141, (making no reference to the act of 1925), including all cities and towns in the state within the scope of the act, and establishing in each such municipality

". . . a fund for the purpose of guaranteeing, to the extent of such fund and in the manner hereinafter provided, the payment of its local improvement bonds and warrants issued to pay for any local improvement ordered; (a) In any city of the first class having a population of more than three hundred thousand, subsequent to the effective date of this act; (b) In any city or town having created and maintained a guaranty fund under chapter 141 of the 1923 Session Laws of Washington, subsequent to the date of establishment of such fund; (c) In any other city or town, subsequent to April 7, 1926." Rem. Rev. Stat., § 9351-1 [P. C. § 1071-1].

The act again excepted from its operation cities of the first class maintaining a guaranty fund pursuant to Laws of 1917, chapter 138, *supra.*

Section 2 of the act, p. 309, reads as follows:

"Such fund shall be designated 'Local Improvement Guaranty Fund.' For the purpose of maintaining the same every city or town shall after the creation thereof

levy, from time to time, as other taxes are levied, such sums as may be necessary to meet the financial requirements thereof; *Provided,* that such sums so levied in any year shall not be more than sufficient to pay the outstanding warrants on said fund and to establish therein a balance which combined levy in any one year shall not exceed five per centum of the outstanding obligations thereby guaranteed. The tax levies herein authorized and directed shall be additional to and if need be in excess of any and all statutory and charter limitations applicable to the tax levies of any city or town." Rem. Rev. Stat., § 9351-2 [P. C. § 1071-2].

This case presents for consideration two questions: First, as to the nature and extent of the tax pledge established by the act of 1925; and second, the scope and effect of the act of 1927, and whether that act operates retroactively in such a manner as to bring within its protection the bonds and interest coupons described in appellant's first cause of action. We shall first consider the character of the tax pledge established by the act of 1925.

Respondents argue that § 2 of the act, in so far as the question now under consideration is concerned, is not ambiguous, and so clearly provides for establishing a guaranty fund in an amount equal to no more than five per cent of the bonds or warrants issued subsequent to April 7, 1926, that no occasion exists for judicial construction of the words "tax credit," as contained in the section referred to, and that for this reason the courts may not resort to extrinsic aids in determining the legislative intent or the meaning of the phrase.

Appellant argues, on the other hand, that the phrase *tax credit* is ambiguous and a proper subject for judicial construction. Appellant then argues that, when matters proper to be considered in determining the legislative intent are analyzed, it appears that the

legislature intended the tax credit to be an annual tax levy, to be made when necessary, but never in any one year in an amount greater than five per cent of the bonds and warrants issued and outstanding, as provided in the act of 1927.

It is a well recognized rule of statutory construction that intrinsic and extrinsic aids may be resorted to only when the meaning of a statute cannot be declared from the statutory language to be construed. It follows, then, that, unless the words *tax credit,* considered in connection with the context in which they are found, be held ambiguous, intrinsic and extrinsic aids in determining the meaning of the phrase may not be employed. As we stated in the case of *Ernst v. Kootros,* 196 Wash. 138, 82 P. (2d) 126,

"When the language of the act is plain, free from ambiguity, and devoid of uncertainty, it is unanimously held that there is no room for construction."

Section 1 of the act of 1925, p. 551, established a fund designated by § 2 as the "Local Improvement Guaranty Fund," § 2, p. 552, providing that

"For the purpose of maintaining such fund every city or town issuing local improvement bonds or warrants after April 7, 1926, shall be deemed and held to have pledged to the fund a tax credit of the city or town in an amount equal to five per cent of the bonds or warrants so issued."

Giving to these words their plain and ordinary meaning, the amount of the tax credit pledged to maintain the fund is five per cent of the bonds or warrants issued after April 7, 1926. The words are not ambiguous, and unless the meaning of the provision quoted is rendered doubtful by some other portion of the statute, no basis exists for judicial construction.

That portion of the act establishing the tax pledge is not qualified or contradicted by any other portion

of the act, which contains no intimation that the tax pledge was to be supported by any tax levy other than that pledged in an amount not to exceed five per cent of bonds or warrants issued, such a levy to be made at one time in the amount stated, or by different levies as needed, the total amount of which should not exceed the five per cent of bonds or warrants issued, as provided in the act. Neither does the act contain anything which indicates a legislative intent that the five per cent should be computed on the amount of securities outstanding at the time of the levy, rather than upon the amount of securities originally issued, as is expressly provided in § 2 of the act above quoted.

The act itself clearly indicates that the basis for the computation of the tax credit was the amount of the securities issued, as § 2 provides:

"Such pledge [a tax credit of the city or town in an amount equal to five per cent of the bonds or warrants so issued] shall be deemed to have been made, as to any particular local improvement district, upon the delivery of the roll to the treasurer of the city or town for collection,"

which provision fixes the time at which the tax pledge provided for in the act becomes effective. This pledge is fixed upon delivery of the assessment roll to the treasurer of the municipality, the sum pledged being at that time definitely ascertained and established. The fact that many of the bonds may be retired by payment of assessments, and not remain "outstanding," has nothing to do with the amount of the pledge.

The tax credit provision of the act of 1925 being clearly defined in the act, in language free from ambiguity, and the act containing no language which in any way conflicts with the plain meaning of the definition, no occasion exists for consideration of other

legislative enactments or any extraneous matter, in order to judicially determine the legislative intent. We accordingly hold that the tax credit pledged by the act of 1925 is not an annual levy, each such levy to be in an amount not exceeding five per cent of the bonds or warrants issued, nor does the act contemplate an annual levy, each such levy to be in an amount not exceeding five per cent of the securities then outstanding. The tax pledge provided for by the act, then, is, as stated therein, "a tax credit . . . in an amount equal to five per cent of the bonds or warrants so issued." This is the measure of the protection enjoyed by the holders of bonds or warrants issued for improvements ordered subsequent to April 7, 1926, and before June 8, 1927, the period between those dates being the time the act of 1925 was in full force and effect. The act places no restriction upon the number of levies which may be made, that being governed by the face value of bonds and warrants issued and the financial needs of the guaranty fund.

Respondents, while agreeing that the act of 1925 provides for only a single five per cent tax pledge, argue that, as to the bonds with which we are now concerned, the tax credit securing the same has already been exhausted. With this contention we cannot agree. It stands admitted that taxes have already been levied and collected, and applied to the payment of certain bonds and warrants issued by the city, in an amount equal to five per cent of all bonds issued between April 7, 1926, and June 8, 1927, but it also appears that the city of Bellingham has, since June 8, 1927, issued local improvement district bonds in an amount in excess of three hundred thousand dollars and that no tax has been levied on account of such

bond issues for the benefit of the bonds owned by appellant.

Under the act of 1925, appellant's bonds were protected by a tax pledge equal in amount to five per cent of all bonds or warrants issued subsequent to April 7, 1926. It seems clear that the act of 1927 cannot be so construed as to have the effect of cutting off the right of appellant to the tax credit accorded by the act of 1925, as to bonds issued subsequent to June 8, 1927. To so construe the latter act would amount to an unconstitutional impairment of the contractual obligation between the city and appellant, as owner of bonds issued under the protection of the act of 1925.

In the case of *Hubert v. New Orleans*, 215 U. S. 170, 54 L. Ed. 144, 30 S. Ct. 40, is found the following:

"A number of decisions in this court have settled the law to be that where a muncipal corporation is authorized to contract, and to exercise the power of local taxation to meet its contractual engagements, this power must continue until the contracts are satisfied, and that it is an impairment of an obligation of the contract to destroy or lessen the means by which it can be enforced."

The promise of the tax credit accorded by the act of 1925 entered into, and became a substantive portion of, the contract between the city of Bellingham and appellant, or appellant's predecessors in interest. The tax credit was intended to, and of course did, enhance the marketability and value of bonds issued under and enjoying the benefit of that act. The tax credit therein provided for was intended as security for the benefit of the bondholders, and subsequent legislation must be held ineffective in so far as destroying or reducing the value of the tax credit is concerned. *Hubert v. New Orleans, supra; Louisiana v. Pilsbury,*

105 U. S. 278, 26 L. Ed. 1090; *Von Hoffman v. Quincy,* 71 U. S. 535, 18 L. Ed. 403.

 The act of 1927 does not expressly repeal the act of·1925, or any portion thereof. To hold that the 1927 act by implication repealed the tax credit provisions of the act of 1925, would require a holding that the act of 1927 is unconstitutional, in so far as it, by an attempted repeal by implication, impairs appellant's contract right to the benefit of the tax credit, contained in the act of 1925, which became a portion of the contract between the city of Bellingham and appellant. Repeals by implication are not favored, and no such repeal will be held to exist where the earlier and the later statutes may stand together and both be held valid. The provisions of the act of 1925 establishing the tax credit and providing for the levy of taxes in support thereof are not in conflict or out of harmony with the act of 1927. To avoid any constitutional difficulty, the later act should be construed as applying prospectively and as operating only for the benefit of holders of securities issued subsequent to its·effective date, and which otherwise come within the terms of its guaranty. Each act exclusively pertains to a definite subject matter, to wit, bonds or warrants issued for improvements ordered while the respective acts are in force. The acts are not irreconcilable.

Even if the act of 1927 be necessarily construed as repealing by implication the tax credit and taxing provisions of the act of 1925, no such repeal should be given effect with the result that appellant be denied the right to require for its benefit such tax levies as were by the act of 1925 pledged for the benefit and protection of the holders of securities issued under the 1925 act. Municipalities which issued bonds en-

joying the protection of the guaranty fund act of 1925 continued, even after the effective date of the act of 1927, to have full power to levy taxes in accordance with the provisions of the 1925 act, for the benefit of persons holding securities issued under that act. The right and the duty to exercise this taxing power continues and is commensurate with the contract rights of the owners of the securities.

The law in force at the time the contract was made became part of contracts executed thereunder, and continues in force for the benefit of persons entitled thereto, until the engagements of the contract are fully performed. The municipal power to tax cannot be abated or destroyed until the contract claims to the benefit of the exercise of the taxing authority and duty have been fully satisfied. *Wolff v. New Orleans,* 103 U. S. 358, 26 L. Ed. 395; *Ralls County Court v. United States,* 105 U. S. 733, 26 L. Ed. 1220; *Von Hoffman v. Quincy, supra; Nelson v. St. Martin's Parish,* 111 U. S. 716, 28 L. Ed. 574, 4 S. Ct. 648; *Seibert v. Lewis,* 122 U. S. 284, 30 L. Ed. 1161, 7 S. Ct. 1190.

It follows that the city of Bellingham is under obligation to the holders of defaulted securities issued under the protection of the guaranty act of 1925, to levy for the benefit of such security holders taxes sufficient to redeem warrants issued to purchase such defaulted securities, provided, however, that the total of such levies shall not exceed five per cent of the bonds or warrants issued subsequent to April 7, 1926, including such bonds or warrants issued subsequent to June 8, 1927. Taxes collected from such levies should be so identified or earmarked as to inure to the benefit of persons holding securities issued under the protection of the act of 1925.

Concerning the application of the act of 1927 to the securities referred to in appellant's first cause of action,

it is not contended that that act brings within its provisions bonds issued for work ordered prior to its effective date. Appellant, however, does contend that the act of 1927 should be considered as an aid in construing the act of 1925, and that the later act indicates that by the act of 1925 the legislature intended to provide for a five per cent annual levy (computed on the face value of bonds and warrants outstanding) for the benefit of defaulted bonds and warrants.

If we were of the opinion that the act of 1925, as to the questions presented by the case at bar, is ambiguous, it would be proper to consider the later act in determining the legislative intent as expressed in the earlier statute, but as we hold that, in the particulars referred to, the act of 1925 is not ambiguous, the act of 1927 cannot be considered in construing the earlier statute. The bases upon which the respective five per cent levies are to be computed, according to the provisions of the two acts, differ greatly, the earlier act pledging a total tax credit not to exceed five per cent of bonds or warrants issued, the other an annual tax credit not to exceed five per cent of bonds or warrants outstanding.

In so far as the act of 1927 purports to bring within its terms securities issued before its effective date, the act must be held ineffective, as within the ban of Art. XI, § 12, of the constitution of the state of Washington. *Longview Co. v. Lynn, supra.*

The order appealed from denied the issuance of a writ of mandate against respondents on appellant's second cause of action, and dismissed that cause of action. As to appellant's first cause of action, the order directed that a writ of mandate issue commanding respondents Hanning, as mayor, McGinnis, as city treasurer, and Binzer, as comptroller of respondent city, to issue in appellant's favor warrants in the

amount of $679, covering the matured and unpaid interest coupons referred to in appellant's first cause of action.

The judgment appealed from is in all things affirmed.

ALL CONCUR.

[1]Reported in 111 P. (2d) 760.