[No. 45491. En Banc. February 22, 1979.]

CATHARINE DOLORES TONDEVOLD, *Respondent*, v. BLAINE
SCHOOL DISTRICT NO. 503, ET AL, *Appellants*.

*John T. Slater,* for appellants.

*Cogdill, Deno & Millikan,* by *W. Mitchell Cogdill* and
*Kent Millikan,* for respondent.

DOLLIVER, J.—Catharine Tondevold is a grade school teacher in the Blaine School District. In 1976, she reached the age of 65 and was told that she must retire under the district's mandatory retirement policy. The trial court heard Ms. Tondevold's appeal from that decision and ordered her reinstated after finding that the "policy" no longer existed because of a history of negotiations between the district and the teachers' association. We accepted certification from the Court of Appeals and affirm.

The Blaine School District adopted a mandatory retirement policy in 1969 which required school employees to retire at the end of the school year in which they reached the age of 65. That portion of the mandatory retirement policy applicable to certificated staff members was assigned policy No. 3400 in the school district's policy manual. This policy was in effect during the 1969–70, 1970–71, and 1971–72 school years.

In 1972, representatives of the district and the Blaine Education Association (BEA), which represents certificated staff in that district, entered into a negotiated agreement pursuant to RCW 28A.72.030. The agreement included a mandatory retirement provision which was substantially the same as policy No. 3400. That provision was made a part of the agreement for the 1972–73, 1973–74, and 1974–75 school years. RCW 28A.72.030 was repealed in 1976 and replaced by the Educational Employment Relations Act, RCW 41.59.

In July 1974, the district hired a new superintendent who informed the representatives of the BEA that the then–existing negotiated agreement was terminated effective at the end of the 1974–75 school year. This termination was pursuant to an express term of the agreement allowing termination upon notice to the other party. The association and the district then began negotiating a new agreement to become effective at the beginning of the 1975–76 school year. When the agreement between the two parties was finally adopted, it did not contain a mandatory retirement provision. There is some dispute as to whether the parties

had ever discussed the inclusion of such a provision; the trial court made no finding upon this issue.

The trial court did find, however, that the BEA had initially proposed the inclusion of a mandatory retirement policy but had decided to delete that provision. The record further shows the copy of the proposal which the district received from the association indicated that the association did not want the provision included in the agreement.

After being told by the superintendent that she was expected to retire at the end of the 1975–76 school year, plaintiff, on January 12, 1976, gave notice she planned to continue teaching. At a regular meeting of the school board on February 9, 1976, the board voted to "reaffirm" board policy No. 3400. Later in the same meeting, the board instructed the superintendent to notify plaintiff she would not be reemployed as a teacher for the 1976–77 school year. Plaintiff requested a hearing by the board, an option available to her under RCW 28A.58.450. After the hearing, the board determined there was sufficient cause to nonrenew plaintiff's contract. Plaintiff appealed this decision to the Superior Court pursuant to RCW 28A.58.460, .480. The court found the mandatory retirement policy enacted by the school board in 1969 became a matter of contract in 1972, and continued to be a matter of contract through 1975. The failure of the parties to include the provision in the 1975–76 negotiated agreement, said the court, meant that it no longer existed. The court ordered plaintiff reinstated to her teaching position, gave her judgment for salary lost between the time of nonrenewal and the time of reinstatement, and awarded attorney's fees in the amount of $9,229.50. RCW 28A.58.490.

Although defendants assign error to 23 findings and conclusions of the trial court and state that eight issues are involved in this case, there really is only one question which we must decide: Was the school district's mandatory retirement policy in force and effect at the time the school board determined on February 9, 1976, it would not rehire plaintiff because she had reached age 65?

■ The general relationship between school authorities and teachers in the public schools of our state is created by contract and governed by general principles of contract law. *Kirk v. Miller,* 83 Wn.2d 777, 522 P.2d 843 (1974). Agreements between representatives of teachers and school district authorities are contracts and are to be construed by contract principles. *Neilson v. Vashon Island School Dist. 402,* 87 Wn.2d 955, 558 P.2d 167 (1976). The contract between the parties here contained a mandatory retirement provision. The defendants, through the superintendent, terminated the entire contract, including the mandatory retirement provision. When the contract was renegotiated, that provision was not included. The trial court's unchallenged finding of fact was that the BEA had asked the district to delete such a provision and the district's representatives complied. The history of these negotiations compels the conclusion that the parties knowingly abandoned the policy of mandatory retirement.

■ Defendants claim that, despite this abandonment in the negotiation process, policy No. 3400 continued to have an independent legal existence and could, therefore, be enforced against the plaintiff. They cite *United States Steel Corp. v. Nichols,* 229 F.2d 396 (6th Cir. 1956). In that case, the court held a preexisting management policy of mandatory retirement continued in effect notwithstanding a subsequent bargaining contract which did not contain a mandatory retirement clause because the parties had been unable to agree on such a clause. The reasoning of the court in that case would be persuasive here if the policy of management had ever been incorporated into a collective bargaining agreement. It was not. In this case, by contrast, the board's mandatory retirement provision was included in the contract for 3 years. Although the provision had existed as board policy prior to 1972 when it was incorporated into the agreement between the parties, it became a matter of contract. While the policy could continue to exist, its validity depended upon the terms in the agreement. When the

agreement eliminated any reference to mandatory retirement, the board policy did not survive. It would work a grave injustice upon negotiations everywhere to hold otherwise and say that a contractual provision can be unilaterally revived after negotiations are completed and an agreement reached by the parties. The board's "reaffirmance" of policy No. 3400 was a modification of an existing contract by one of the parties. It is an elementary principle of contract law that a modification must be agreed to by both parties and cannot be done unilaterally. *Snyder v. Roberts,* 45 Wn.2d 865, 278 P.2d 348, 52 A.L.R.2d 631 (1955). The "reaffirmance" was void and had no effect.

Defendants argue that the "reaffirmance" was made under a "management rights" clause contained in the agreement. Such a clause was the basis in the *Nichols* decision for enforcing the mandatory retirement policy promulgated by the employer. Article III(G) recites that "all rights, powers, prerogatives, duties and authority which the said Board now has or had prior to this agreement are retained by the Board except for those which are specifically abridged or modified by this agreement." But we have previously said the mandatory retirement policy had been abandoned. It cannot be revived by article III(G).

Furthermore, there are two standard clauses which were not included in the contract: A "Maintenance of Standards" clause, which "grandfathers in" prior policies, and a "Relationship to Existing Rules, Regulations and Policies" clause, which provides that policies and agreements which are not superseded or changed by the new contract shall remain in force. Either one of these clauses would have allowed the board to retain the retirement policy contained in the previous contract despite the lack of a mandatory retirement provision in the new agreement. Defendants conceded at trial that both of these clauses are commonly used and could have been included in the agreement.

We are reluctant to read into a "management rights" clause an authorization to the board to adopt, without

agreement, negotiations or even notice to the association, policies which directly impact the continued employment of district employees, especially where such employees are represented by a qualified representative which has engaged in protracted negotiations leading to the ratification of a comprehensive agreement. Moreover, the management rights clause is directly limited by another paragraph in the same article of the agreement which subjects decisions regarding reemployment conditions to provisions of the agreement, article III(B):

> To hire all employees and, subject to provisions of law and this agreement, to determine their qualifications and conditions for their continued employment, dismissal or demotion;

Since we are convinced that the history of negotiations in this case indicates an abandonment of any mandatory retirement policy, the decision of the board to institute such a policy after the agreement had been ratified was a violation of the agreement.

Finally, defendants argue plaintiff should not have been awarded reasonable attorney's fees under RCW 28A.58.490. While the reasonableness of the award is not contested, defendants claim no award is authorized under the statute. The statute provides:

> If the court enters judgment for the employee, and if the court finds that the probable cause determination was made in bad faith or upon insufficient legal grounds, the court in its discretion may award to the employee a reasonable attorney's fee for the preparation and trial of his appeal, together with his taxable costs in the superior court.

Defendants urge us to interpret the phrase "or upon insufficient legal grounds" as referring only to those situations where the basis for nonrenewal or discharge of the employee would be insufficient on legal grounds even though proved at the time of trial. As examples, defendants mention that the persons may have been nonrenewed on the basis that they were black or Jewish or bachelors. The

argument is ingenious but unpersuasive. Plaintiff was non-renewed on "insufficient legal grounds". The trial court acted properly in awarding attorney's fees to plaintiff.

Affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.

Reconsideration denied May 10, 1979.