[No. 3590–2; 3815–2. Division Two. April 23, 1979.]

CAROL ARNIM, *Appellant,* v. SHORELINE SCHOOL DISTRICT No. 412, ET AL, *Respondents.*

DIANE ELLIOTT, *Respondent,* v. SHORELINE SCHOOL DISTRICT No. 412, ET AL, *Appellants.*

152

*Symone B. Scales,* for appellant Arnim.

*John Keough,* for Shoreline School District.

*Symone B. Scales,* for respondent Elliott.

PEARSON, C.J.—These consolidated appeals involve two teachers who were not rehired by Shoreline School District No. 412 after having been on leaves of absence during the 1975–76 school year. Both teachers sought reinstatement through actions brought in the Superior Court for King County. One department of that court awarded Diane Elliott reinstatement and back pay while another denied any relief to Carol Arnim. For the reasons set forth below, we reverse as to Ms. Elliott and affirm as to Ms. Arnim.

The facts in both of these cases are essentially identical. Both teachers requested and were granted leaves for the

1975–76 school year. Both teachers made timely requests, under the leave of absence policy[1] (policy 4310) negotiated between the school district and the Shoreline Education Association (the certified bargaining representative of the certificated employees in the district), for reemployment. In the case of both teachers, the school district's personnel officer, Dr. William Shertzer, determined that there were no positions available for which the teachers in question were qualified. He thus did not recommend to the district's board of directors that they employ either of the teachers and the board did not hire either of them. RCW 28A-.58.100.

Even though the school district is appellant in the *Elliott* matter and the employee is appellant in the *Arnim* matter, these consolidated cases present essentially the same issues.

The first broad issue involves the proper interpretation of policy 4310 and of other parts of the collective bargaining agreement between the Shoreline Education Association (SEA) and the district. Specifically, consideration must be given to the meaning of "available position," the meaning of "qualified," and the question of whether the district is affirmatively required to advise teachers to take courses to prepare them for possible available positions.

██ We begin our analysis by pointing out that the general relationship between teachers and their employer school districts is governed by the general principle of contract law. *Tondevold v. Blaine School Dist. 503*, 91 Wn.2d 632, 590 P.2d 1268 (1979); *Kirk v. Miller*, 83 Wn.2d 777, 522 P.2d 843 (1974). One of the basic principles of contract law is that the general law in force at the time of the formation of the contract is a part thereof. *State ex rel. Washington Mut. Sav. Bank v. Bellingham*, 8 Wn.2d 233, 111 P.2d 781 (1941); *Fischler v. Nicklin*, 51 Wn.2d 518, 319

---

[1]Policy 4310 of the Shoreline School District reads, in pertinent part:

"The District is obligated to reemploy a certificated staff member on leave of absence subject to the availability of a position where qualified and certificated [upon a timely notice by employee], maintaining his position on the certificated staff salary schedule."

P.2d 1098 (1958); RCW 28A.67.070. In the area of education, one such general law of broad importance is the so–called "continuing contract law," RCW 28A.67.070 *et seq.* The form of this statute has somewhat changed by amendment since the events giving rise to this action, but the basic principles, as they apply to teachers in the situation of Arnim and Elliott, have not. While it is not a true tenure statute, *Peters v. South Kitsap School Dist. 402,* 8 Wn. App. 809, 509 P.2d 67 (1973), the continuing contract law does give reemployment rights to current employees it covers. *Simpson v. Kelso School Dist. 403,* 20 Wn. App. 545, 581 P.2d 1065 (1978). The rights may be involuntarily cut off only if the statutory procedure is followed. *Peters v. South Kitsap School Dist. 402, supra.*

All parties agree that for a number of years preceding 1975, the Shoreline School District had been undergoing a decline in enrollment which resulted in a reduced need for teachers. This decline in enrollment did not take place uniformly over the entire school district. The enrollment in some schools actually increased while that of the whole district declined. A certain staffing imbalance resulted.

The school district's basic position is that policy 4310 must be interpreted in light of continuing contract law and the negotiated policies relating to reassignment and transfer of employees with continuing contract rights. Briefly, the district argues that it must be allowed to transfer or otherwise accommodate the existing staff (who must be employed absent compliance with the continuing contract law's procedure for cutting off their reemployment rights) before persons returning from leave, who do not have continuing contract rights, are placed in positions. *Simpson v. Kelso School Dist. 403, supra.* According to the district, a position is not available until all continuing staff are placed.

We agree with this contention. In order to give effect to all the policies involving employee transfers and assignments and in order to recognize the reality of continuing employment rights under RCW 28A.67, we are compelled to

accept a construction of policy 4310 which allows the school district to place all continuing staff, including teachers who request transfer,[2] before positions become "available" for any other teachers not having continuing contract rights, including those returning from leave. We cannot accept a construction of policy 4310 which would require that teachers coming back from leave be rehired in preference to any other teachers already employed in the district but being transferred. In short, we find the general law to be that positions are not "available" to persons who do not have continuing contract rights (including persons returning from leave) until after teachers with those rights, including teachers being transferred, are placed.

We point out that this result can conceivably be altered by a collective bargaining agreement arrived at under RCW 41.59. However, absent express contractual language requiring placement of teachers returning from leave in preference to those with continuing contract rights, we may not sanction such a result. We feel constrained to once again point out that school districts are public bodies which expend public funds. As such, they are required to make efficient use of those funds to deliver the best possible educational program to the students in the district. *State ex rel. DuPont–Ft. Lewis School Dist. 7 v. Bruno*, 62 Wn.2d 790, 384 P.2d 608 (1963). We do not perceive that a provision requiring the hiring of more staff before all existing staff have been placed by the district in positions corresponding to the needs of the educational program of the district advances this goal.

■ The second question is what "qualified" means for purposes of policy 4310 and who determines whether a given teacher is "qualified" for a given position. Policy 4310 is silent on this question. Consequently, we must again

---

[2]It should be noted that the school district has long followed a practice of putting both teachers who voluntarily request transfers and those who must be transferred because they are not needed in the building they are assigned to in a pool and reassigning them as needed.

resort to general law to construe this word. As noted above, the board of directors of a school district, by statute, employs the teachers in the district. RCW 28A.58.100; RCW 28A.67.070. However, the board may employ agents to assist it in making hiring decisions and may even delegate to these agents the tasks of reviewing the qualifications of applicants and submitting to the board recommendations about which applicants are best qualified. *Diedrick v. School Dist. 81,* 87 Wn.2d 598, 555 P.2d 825 (1976); *Pierce v. Lake Stevens School Dist. 4,* 84 Wn.2d 772, 529 P.2d 810 (1974).

In the present case, the Board of Directors of Shoreline School District employed an assistant superintendent, Dr. William Shertzer, to act as, among other duties, personnel officer for the district. It is thus specifically Dr. Shertzer who initially acted to determine which teachers to recommend that the board employ. We conclude, based on the statutory scheme set forth above, that under policy 4310 it is the Board of Directors which determines which teachers are "qualified." We further conclude that the board may delegate to Dr. Shertzer the authority to decide which teachers he thinks are most qualified for a position and to recommend employment of those teachers to the board.

Having determined that Dr. Shertzer is the proper person to decide, in the first instance, the question of relative qualifications, we now turn to the question of the standard by which we review Dr. Shertzer's decision. Without doubt, the question of the relative qualifications of teachers is one professional educators have more expertise in analyzing than do members of the judiciary. Such decisions are not ones courts historically have made, nor are they decisions courts could have been charged with in the first making. Decisions about which teachers to hire are thus nonjudicial administrative decisions. *Floyd v. Department of Labor & Indus.,* 44 Wn.2d 560, 269 P.2d 563 (1954). Since making the decision on which applicant to hire is a nonjudicial function, we can review the decision only to determine whether it is illegal or arbitrary and

capricious. *State ex rel. Hood v. State Personnel Bd.*, 82 Wn.2d 396, 511 P.2d 52 (1973); *Lane v. Ocosta School Dist. 172*, 13 Wn. App. 697, 537 P.2d 1052 (1975).

After reviewing the record, it appears that, at most, there is a difference of opinion between witnesses about the relative qualifications of Ms. Arnim, Ms. Elliott, and other applicants for teaching positions in the school district. We cannot say that there was no rational basis for the hiring decisions made. The record simply does not support a conclusion that the decision was willful or unreasoning and therefore it must stand. *Simpson v. Kelso School Dist. 403, supra.*

Next we consider whether policy 4310 places an affirmative duty on the school district to inform teachers on leave of how they could improve their qualifications and so their chances of obtaining reemployment upon their return from leave status. We perceive this issue as merely a different way of stating the first issue considered—that of whether teachers returning from leave have some sort of special right to reemployment.

We do not find anything on the face of policy 4310 which places any duty on the school district to tell teachers to take additional training so that they will be qualified for possible job openings. The policy simply does not speak to this question and we have not been provided with any other contractual arguments which would bind the school district to such a duty.

■ Absent contractual duties, we find no statutory or common–law obligation requiring a school district to inform teachers on leave of potential educational opportunities that will improve their qualifications. While it is surely in the best interest of the district and the public to have well qualified staff, this does not mean that it is the employer's task to assure that the would–be employee properly prepares for the job sought. It is the employer who considers the qualifications and the job seeker who develops them rather than vice versa. *See Stieler v. Spokane School Dist.*

*81*, 88 Wn.2d 68, 558 P.2d 198 (1977). Further, there is evidence in the record that at least Ms. Arnim was encouraged by school district personnel to take classes to prepare her for a special reading program but decided not to do so.

■ The next issue presented is what, if any, limitations there may be on the duration of preferential hiring rights held by a person on leave pursuant to policy 4310. Again, the policy does not answer the question and we must resort to general law to decide it. We conclude that whatever the duty of the school district is to employees on leave, that duty terminates at the end of the school year, as that term is defined in RCW 28A.01.020 (June 30 in 1976, now August 31), during which the leave is taken. We base this decision primarily upon a reading of RCW 28A.58.100. This statute allows the board of directors of a school district to employ staff but limits the term of any such employment contract to 1 year. The same statute directs that the board of directors provide for various kinds of leave, including leaves of absence. Had the legislature intended that the 1–year limitation not apply to leaves, such intention should have been expressed in the statute. Absent such expression, we conclude that a 1–school–year limitation applies to the granting of leaves.

However, nothing we say here prevents a school district from agreeing to renew a leave. We only conclude that leaves must be acted upon at least once per school year. Indeed policy 4310 itself provides for extensions of leaves but also requires that if extensions are granted, those extensions can be for only 1 school year at a time.

■ The final issue relates only to the status of Ms. Elliott as an employee of the Shoreline School District. Ms. Arnim's status, because she was never rehired by the school district, presents no such problem. Basically the judgment entered in Ms. Elliott's case, which we reverse, provided both for monetary damages and for Ms. Elliott's reemployment by the school district. In order to fully effectuate our decision, we hold that the school district, which was never properly required to rehire Ms. Elliott, may at its option

terminate her employment, without regard to the continuing contract law, when this opinion becomes final. *See Oneal v. Colton Consol. School Dist. 306,* 16 Wn. App. 488, 557 P.2d 11 (1976).

The school district must, of course, compensate Ms. Elliott for any work she actually performed for the district. Such compensation shall be computed by determining Ms. Elliott's per diem pay, using the salary schedule in the current collective bargaining agreement and multiplying that figure by the number of days worked. Any fringe benefit contributions covering time actually worked, including retirement contributions, must also be made.

 The parties have raised several other issues. None of these matters is supported by any citation of authority, however. Since we find no merit on the face of these issues, we will not consider them further. *State v. Partin,* 88 Wn.2d 899, 567 P.2d 1136 (1977).

Cause No. 3590-II (*Arnim v. Shoreline School Dist. 2*) affirmed.

Cause No. 3815-II (*Elliott v. Shoreline School Dist. 2*) reversed.

PETRIE and REED, JJ., concur.

Reconsideration denied May 17, 1979.

Review denied by Supreme Court September 7, 1979.