Catherine M. ZUELSDORF and Patrick Daley, Appellants,

v.

UNIVERSITY OF ALASKA, FAIRBANKS, Appellee.

No. S–3199.

Supreme Court of Alaska.

June 1, 1990.

Rehearing Denied July 10, 1990.

Scott L. Taylor and Lloyd I. Hoppner, Hoppner & Paskvan, Fairbanks, for appellants.

Gail M. Ballou, Law Office of Gail M. Ballou, Fairbanks, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This appeal presents the question whether two non-tenured assistant professors at the University of Alaska, Fairbanks, received proper notice of nonretention. The superior court entered summary judgment for the University. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Catherine M. Zuelsdorf and Patrick Daley were assistant professors at the University of Alaska Fairbanks during the 1985–86 academic year. Their letters of appointment stated that the conditions of their employment would be governed by the University personnel policies and regulations "in effect on the date of this letter and as duly amended thereafter." At the time of their appointments, personnel regulation 04.01.12(A)(3) entitled a full-time tenure track assistant professor with three or more years of service to fifteen months notice of nonretention.[1] Thus, the parties agree that, under the original policy, the University had to notify Zuelsdorf and Daley no later than March 31, 1986, if it did not intend to hire them for the 1987–88 academic year.

On December 12, 1985, the Board of Regents amended the policy to require notice of nonretention by June 30 of the year preceding the end of an appointment. The amendment, however, was to become effective on July 1, 1986, and was not intended to apply to existing contracts.

On May 19, 1986, after the March 31 notice deadline for nonretention in 1987–88 had passed, the Regents advanced the effective date of the December 1985 amendment to May 19, 1986.[2] Thus, under the new policy, the University had to notify a non-tenured professor by June 30, 1986, if he or she would not be hired for the 1987–88 academic year. The Regents amended the policy in response to a fiscal crisis created by a precipitous decline in world oil prices during 1986.[3]

On May 23 and May 19, 1986, respectively, the University notified Zuelsdorf and Daley that the 1986–87 academic year would be their last. Zuelsdorf and Daley filed grievances, arguing that they were entitled to contracts for the 1987–88 academic year because they did not receive notices of nonretention by March 31, 1986. The University denied the grievances.

Zuelsdorf and Daley filed separate administrative appeals and a joint civil complaint against the University.[4] The cases were consolidated. Following cross-motions for summary judgment, the superior court entered judgment for the University. This appeal followed.

## II. STANDARD OF REVIEW

We will affirm a summary judgment if the evidence in the record presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Alaska R.Civ.P. 56(c). The interpretation of the words in a contract presents a question of law for the court, whereas resolution of disputes regarding surrounding circumstances is for the trier of fact. *Norton v. Herron*, 677 P.2d 877, 880 (Alaska 1984); *Dresser Industries v. Foss Launch & Tug Co.*, 560 P.2d 393, 395 n. 3 (Alaska 1977). In this case, the extrin-

---

**1.** When Zuelsdorf and Daley accepted contracts for the 1985–86 academic year, Policy 04.01.12(A)(3) provided:

[N]otice of nonretention of an employee classified as exempt must, unless otherwise provided, be given in writing by the University in accordance with the following schedule:
. . . .
(3) At least fifteen months before the expiration of an appointment if by the expiration of the employee's current appointment the employee shall have been employed by the University continuously for at least three full academic years.

**2.** Policy 04.01.12(A)(2) (as amended) provides: Effective May 19, 1986, notice of nonretention of an employee classified as exempt must, unless otherwise provided, be given in writing by the University as follows:
. . . .

(2) Faculty members shall receive notice of nonretention in accordance with the following schedule:
. . . .
(c) Not later than June 30 of the year preceding the expiration of an academic year appointment after two or more years in the institution.

**3.** Although there was apparently a procedure for terminating employees due to financial exigency, the University did not purport to terminate Zuelsdorf and Daley pursuant to that procedure. The University does not allege that Zuelsdorf and Daley were terminated for cause.

**4.** Four tenured professors were also named plaintiffs in the civil suit; however, the parties stipulated to dismiss their claims with prejudice.

sic evidence is not in dispute; therefore, we may exercise our independent judgment to interpret the employment contract and personnel policies.

### III. ZUELSDORF AND DALEY DID NOT RECEIVE ADEQUATE NOTICE OF NONRETENTION

Zuelsdorf and Daley argue that the University breached their employment contracts because it did not provide timely notice of nonretention pursuant to the personnel policies and regulations. The University contends that it did not breach the contracts because it gave timely notice pursuant to the amended policy.

■■ The relationship between non-tenured faculty and the university is created by contract and governed by principles of contract law. *See Tondevold v. Blaine School Dist. No. 503,* 91 Wash.2d 632, 634–36, 590 P.2d 1268, 1270 (Wash.1979); *cf. Shatting v. Dillingham City School Dist.,* 617 P.2d 9, 12 (Alaska 1980) (non-tenured teacher has no *constitutionally* protected interest in continued employment). A contract is interpreted to give effect to the reasonable expectations of the parties, considering the language in the disputed provisions and the contract as a whole. In deciding contract interpretation questions, a court must look to the purpose of the contract, the circumstances surrounding its formation, and case law interpreting similar provisions. *Craig Taylor Equipment Co. v. Pettibone Corp.,* 659 P.2d 594, 597 (Alaska 1983). When an employer drafts and uses a form contract, it is strictly construed against the employer because of the unequal bargaining power between employer and employee, who must accept the contract and personnel rules as offered. *Duncan v. City of Fairbanks,* 567 P.2d 311, 313–14 (Alaska 1977).

■ "[A]n educational institution may undertake a contractual obligation to observe particular termination formalities by adopting procedures or by promulgating rules and regulations governing the employment relationship." *Piacitelli v. Southern Utah State College,* 636 P.2d 1063, 1066 (Utah 1981). As we recently recognized in *Jones v. Central Peninsula General Hospital,* 779 P.2d 783 (Alaska 1989), a personnel handbook promulgated by an employer may modify the terms of an at-will employment agreement. Whether a given manual will modify an employment agreement depends upon the particular facts of each case. *Id.* at 787.

In *Jones,* we endorsed the reasoning of the Supreme Court of Michigan, which stated in *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880, 885 (1980):

> While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly.... It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation."
>
> ....
>
> We hold that employer statements of ... policy ... can give rise to contractual rights in the employee, and, hence, although the statement of policy is signed by neither party, can be unilaterally amended by the employer without notice to the employee, and contains no reference to a specific employee, his job description or compensation, and although no reference was made to the policy statement in preemployment interviews and the employee does not learn of its existence until after his hiring.

*Id.* 292 N.W. at 892 (footnote omitted); *see also Moore v. Utah Technical College,* 727 P.2d 634, 641–42 (Utah 1986) (the apparent intent of the parties to incorporate person-

nel policies into the contract of employment is not defeated merely because the university reserves the right of unilateral amendment).

In this case, the University policies and regulations were a legally enforceable part of the employment contract. The letters of appointment for the 1985–86 academic year expressly stated that "[t]he conditions of your employment with the University of Alaska–Fairbanks are described in the Policy and Regulations Manual, Part IV, Personnel, in effect on the date of this letter and as duly amended thereafter." Part IV of the manual provided specific guidelines governing notice of nonretention to non-tenured faculty members.

█ University policies and regulations which are expressly incorporated into an employment contract may create vested contract rights in the employee. *See Howard University v. Best*, 484 A.2d 958, 968 (D.C.App.1984) (faculty member who is not given notice of nonretention required by faculty handbook may have a legitimate expectancy of reappointment). When one party acquires vested rights under a contract, the other party may not amend the terms of the contract so as to unilaterally deprive the first of its rights; such a change constitutes a modification of the agreement requiring mutual consent and consideration. *See Holiday Inns of America v. Peck*, 520 P.2d 87, 95 n. 19 (Alaska 1974); *Atchison v. City of Englewood*, 193 Colo. 367, 568 P.2d 13, 19 (1977); *Logue v. City of Carthage*, 612 S.W.2d 148, 150 (Mo. App.1981); *Tondevold*, 91 Wash.2d at 634–36, 590 P.2d at 1270. Once earned, a vested contract right may not be modified, diminished or eliminated without employee consent; subsequent unilateral amendments, if effective at all, are effective prospectively only. *Bolling v. Clevepak*

*Corp.*, 20 Ohio App.3d 113, 484 N.E.2d 1367, 1375 (Ohio App.1984).

█ The University argues that, because it retained the right to unilaterally amend its policies, no vested rights could accrue thereunder as a matter of law. We disagree.

. There is no question that the University was entitled to amend its policies and regulations during the contract term. However, as noted above, unilateral amendment could not change those rights which had already vested or accrued under the employment contract. Thus, Zuelsdorf and Daley both had a right to non-terminal contracts [5] for the 1986–87 academic year, which became vested *before* the University amended its policy. The subsequent change in the governing policy could not affect that right without their consent. Had the University amended its policy *prior* to March 31, 1986, the outcome might be different.[6] However, since the University did not act until after the deadline for giving notice of nonretention, we hold that the superior court erred in entering summary judgment for the University, and refusing to enter partial summary judgment for Zuelsdorf and Daley.

The decision of the superior court is REVERSED and the case REMANDED for entry of an amended judgment, after such further proceedings as may be required by our opinion.

---

**5.** In University parlance, a "non-terminal contract" is one which will be renewed the following academic year. It is also called a tenure-track appointment. In contrast, a "terminal contract" is offered an employee who will not be offered another contract after the expiration of the contract period.

**6.** *See Moore*, 727 P.2d at 642 (the question whether an amendment applies to existing contracts depends on the intent of the university); *see also In re Certified Question*, 432 Mich. 438, 457 n. 17, 443 N.W.2d 112, 121 n. 17 (1989) (noting that a change in employer policy might not affect rights vested or accrued under the prior policy).