IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BIFF NELSON,<br><br>     Appellant,<br><br>    v.<br><br>VETTER, INC., dba DGM<br>CONTROLS, a Washington<br>corporation; DONALD VETTER;<br>and WES APPLEBY and JANE<br>DOE APPLEBY, husband and<br>wife,<br><br>     Respondents. | No. 80144-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Biff Nelson worked for Vetter Inc., dba DGM Controls, for 17 years. His 2001 employment contract promised to give Nelson a 15 percent ownership interest after three years, but DGM never issued Nelson any stock certificates. When DGM disavowed his ownership interest in 2018, Nelson sued for breach of contract. The trial court dismissed Nelson's claim on summary judgment, and Nelson appeals.

We conclude that because DGM's bylaws required DGM to issue stock certificates and this requirement was incorporated into the contract, DGM breached the contract in 2004. Therefore, Nelson's complaint is barred by the six-year statute of limitations. We affirm.

FACTS

In November 2001, Donald Vetter solicited Nelson to work as a sales

Citations and pin cites are based on the Westlaw online version of the cited material.

representative for his company, DGM.[1] DGM is a company in the parking system and access control business. Nelson recently had begun a job with Diamond Parking and wanted to leave only if he could obtain an equity interest in DGM. Accordingly, on November 29, 2001, Donald Vetter presented Nelson with a signed employment agreement, which Nelson accepted. The agreement read, in part:

> Ownership Interest
> 1. After 2 years of service receive 10% ownership & company vehicle
> 2. After third year receive additional 5% ownership
> 3. After third year make available remaining 85% of company for purchase at fair market value[2]

Nelson began his employment with DGM in December 2001. Because DGM honored every other term of the agreement, as of 2004, Nelson believed that he had obtained a 15 percent ownership interest in DGM. However, he did not receive stock certificates representing this equity, and DGM's stock ledger does not reflect any stock transfers to Nelson.

In January 2009, Donald Vetter stepped down as president and hired Wes Appleby to replace him. On December 20, 2010, to effectuate a stock transfer of 5 percent to Appleby, Donald Vetter surrendered his original certificate for 500 shares. DGM cancelled the original certificate and issued new ones, with 25 shares to Appleby and 475 to Donald Vetter. These transfers were made in accordance with DGM's bylaws, which require stocks to be represented by

---

[1] DGM disputes Nelson's version of the facts, but it asked the court to accept them as true in its motion for summary judgment. As such, we present the facts as described by Nelson.
[2] (Boldface and capitalization omitted.)

certificates and transfers to be recorded in the stock ledger.[3]

On August 25, 2015, Donald Vetter transferred additional shares to Appleby in order to make them 50-50 owners with 250 shares each. Again, DGM canceled the old certificates, issued new ones, and recorded the transaction in its stock ledger. Furthermore, from 2008 onward, DGM made distribution payments first to Donald Vetter, and then also to Appleby, proportional to their stock ownership as reflected in the stock ledger. Nelson never received any distribution payments from DGM.

On October 17, 2018, Appleby informed Nelson that DGM's sale had been negotiated. The next day, Nelson brought his copy of the agreement to work and asked Appleby how he would be compensated for his equity after the sale. Appleby told Nelson that he would ask Donald Vetter. The next day, Appleby informed Nelson that Donald Vetter recalled the agreement and needed a couple of weeks to present Nelson with a financial proposal for his share of the proceeds.

Two weeks later, Nelson again approached Appleby about his

---

[3] With regard to stock transfers, DGM's bylaws state:
ARTICLE IV. Certificates of Stock.
Section 1. The capital stock of this corporation shall be represented by stock certificates . . . . All certificates exchanged or transferred to the corporation shall be canceled, and no new certificates shall be issued in lieu thereof until the old certificate is canceled.
. . . .
Section 3. Transfers of stock shall be made upon the books of the corporation upon the written request or assignment of the holder, filed with the corporation, on the surrender of the certificate for such stock.

compensation. This time, Appleby informed Nelson that Vetter disputed the validity of the agreement. Vetter claimed that Nelson did not own any interest in DGM and was not entitled to any proceeds from DGM's sale.

On November 9, 2018, Nelson's attorney sent DGM a letter, demanding the transfer of 15 percent equity and compensation upon DGM's sale. On November 13, Appleby placed Nelson on administrative leave with pay. A week later, DGM informed Nelson that it was placing him on administrative leave without pay.

On December 21, 2018, Nelson filed a complaint against DGM, Donald Vetter, and Appleby (collectively Vetter) alleging, among other claims: (1) breach of contract regarding his equity ownership and (2) declaratory and injunctive relief regarding his 15 percent interest in DGM. Shortly thereafter, Vetter filed a motion for partial summary judgment on these two claims, arguing that they were barred by the six-year statute of limitations applicable to contract disputes. Vetter argued that DGM breached the agreement in 2003 and 2004 when it failed to transfer stock certificates to Nelson or, alternatively, that DGM breached the agreement in 2008 when it made distributions to stockholders but not Nelson. The trial court granted the motion for partial summary judgment. Nelson appeals.

ANALYSIS

Nelson contends that Vetter did not breach the agreement until disavowing his ownership interest in 2018, reasoning that it is possible to acquire an ownership interest without the issuance of physical stock certificates. Therefore, he asserts that his claim is not barred by the statute of limitations and

4

that the trial court erred when it granted Vetter's motion for summary judgment. We disagree.

"We review summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Green v. Normandy Park, 137 Wn. App. 665, 681, 151 P.3d 1038 (2007).

An action arising out of a written contract must be commenced within six years. RCW 4.16.040(1). The statute of limitations begins to run when a cause of action accrues, RCW 4.16.005, and a claim arising out of a written contract accrues on breach.[4] 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 577-78, 146 P.3d 423 (2006). Therefore, the question in this case is when DGM breached the agreement.

"'One of the basic principles of contract law is that the general law in force at the time of the formation of the contract is a part thereof.'" Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship, 158 Wn. App. 203, 223, 242 P.3d 1 (2010) (quoting Arnim v. Shoreline Sch. Dist. No. 412, 23 Wn. App. 150, 153, 594 P.2d 1380 (1979)). Under the laws governing certificates, since 1989, shareholders

---

[4] A narrow exception allows the discovery rule to apply to latent construction defects. Vertecs, 158 Wn.2d at 580. As the parties correctly note, this exception does not apply here.

have generally been recognized as having equivalent rights whether or not they hold stock certificates. Former RCW 23B.06.250 (1989).[5] However, under former RCW 23B.06.260 (1989), a corporation may issue shares without certificates "*[u]nless the . . . bylaws provide otherwise.*" (Emphasis added.) By corollary, if the bylaws provide otherwise, the statute requires the transfer of shares to be accompanied by the issuance of certificates.

Here, DGM's bylaws require that shares be represented by certificates. Thus, although former RCW 23B.06.260 does not require all shares to be represented by certificates, it does require DGM's shares to be represented by certificates. This statutory requirement was incorporated into the agreement. Cornish, 158 Wn. App. at 223. But DGM did not do what was legally required to effectuate a transfer in 2003 or 2004,[6] and in 2010, DGM transferred shares to Appleby that should have belonged to Nelson. Indeed, Nelson never received any certificates for his shares, neither in 2003 and 2004 when he should have received shares under the agreement, nor in 2010 when Donald Vetter redistributed shares to Appleby. Accordingly, Nelson's cause of action accrued more than six years before he filed his complaint. Therefore, the trial court did not err when it granted summary judgment and found that the statute of

---

[5] The former RCW sections discussed here have been slightly amended but have substantively the same effect today.

[6] Moreover, under former RCW 23B.06.260(2), even where certificate-less transfers are permitted, there is a requirement that the corporation "send the shareholder a written statement" with the information that would otherwise be included on a certificate. There is no evidence of such a statement in this case.

limitations barred Nelson's claims.[7]

Nelson disagrees. In support of his contention that Vetter breached the agreement in 2018, Nelson claims that DGM's bylaws, on their face, do not require stock certificates to be issued in order to effectuate a transfer. Specifically, he claims that "[w]hile DGM's Bylaws do provide for the issuance of stock certificates, they do not anywhere state that a person may not own an interest in the corporation without the issuance of a stock certificate." However, the bylaws clearly state that DGM's stock "shall be represented" by stock certificates, that certificates "shall be issued" after the old certificate is cancelled, and that stock transfers will take place only "on the surrender" of the old certificate. In context, the bylaws require DGM to issue certificates as part of a stock transfer. Therefore, we are not persuaded.

Moreover, Nelson does not cite any Washington cases to support his claim that the breach occurred in 2018. He cites many out-of-state cases to support the general assertion that shares do not need to be represented by certificates, but none engage the more specific question here as it relates to the statute's interrelation with the bylaws. In fact, the reasoning in one of the cases he cites would support an interpretation that the contract was breached in 2010. In Maynard v. Doe Run Lead Co., 305 Mo. 356, 373-74, 265 S.W. 94 (1924), the court concluded that while a party did not need certificates to have a right to

_____

[7] The parties also disagree as to whether DGM's payments of dividends to its shareholders but not to Nelson constitute a breach of contract. Because we conclude that the agreement was breached in 2003 and 2004, we need not reach this issue.

shares, plaintiff's cause of action accrued when the directors of the company asserted a right to the stock which was hostile to his claim. Here, Donald Vetter's original certificate for 500 shares was only cancelled in 2010, when DGM replaced it with certificates for 25 shares to Appleby and for 475 shares to Donald Vetter. By leaving Nelson's ownership interest out of the equation, DGM's officers asserted a right that was hostile to Nelson's claim. And if the contract was breached by this transfer in 2010, Nelson's suit would still be barred by the statute of limitations. Thus, Nelson's reliance on Maynard is misplaced.

Our Supreme Court has noted that through statutes of limitations, our judicial system balances the "goal of the common law 'to provide a remedy for every genuine wrong' while recognizing, at the same time, that 'compelling one to answer stale claims in the courts is in itself a substantial wrong.'" Vertecs, 158 Wn.2d at 579 (quoting Ruth v. Dight, 75 Wn.2d 660, 665, 453 P.2d 631 (1969)). Under the facts presented to us, Nelson undoubtedly suffered a genuine wrong. However, Vetter took actions hostile to his claim for 14 years, and the legislature does not intend for Nelson to be able to bring his claim for the first time now.

For the foregoing reasons, we affirm.

WE CONCUR:

8