[No. 5707-7-II.   Division Two.   October 17, 1983.]

THOMAS K. BROWN, *Appellant,* v. SUBURBAN OBSTETRICS & GYNECOLOGY, P.S., ET AL, *Respondents.*

*Elvin J. Vandeberg* and *Brian M. Tollefson,* for appellant.

*Robert D. Nelson,* for respondents.

PETRIE, J.—Plaintiff, Thomas K. Brown, M.D., a former employee of defendant corporation, Suburban Obstetrics & Gynecology, P.S., appeals a judgment in his favor but which denied him reasonable attorney's fees. Defendant corporation cross–appeals the same judgment, contesting the amount of the judgment. We affirm on defendant's cross appeal but reverse on plaintiff's appeal.

Dr. Brown commenced employment with defendant on October 1, 1977. During the first 3 months he was paid $3,000 per month. Early in 1978, plaintiff and defendant entered into a 5–year employment agreement, effective January 1, 1978. Under the terms of that agreement, Dr. Brown's "base salary" was designated "[n]one," but as

"additional compensation" he was to receive 40 percent of the first $90,000 of gross receipts from medical services he provided and 27.5 percent of any additional gross receipts "during each year of the term" of the contract.

Dr. Brown terminated employment on September 30, 1978. By stipulation of the parties, the gross cash receipts received by defendant resulting from medical services provided by plaintiff during the period January 1 through September 30 was $138,475.75. Thus, under the scheduled compensation, Dr. Brown was entitled to $49,330.83 "additional compensation" for that 9–month period. Defendant paid him $43,614, leaving a balance of $5,716.83.[1]

Plaintiff brought this action to recover the balance due and also sought to have reasonable attorney's fees assessed pursuant to RCW 49.48.030.[2] Defendant denied any balance was due and counterclaimed for reimbursement for its "start–up costs," *i.e.,* its "expenditures for fixtures, equipment and supplies . . ." made on Dr. Brown's behalf and which, it contended, he orally agreed to repay as a condition of his acceptance of employment.

Defendant does not challenge on appeal the trial court's finding that

> Neither the written agreement between the parties nor any oral agreement provides for a repayment by the Plaintiff to the defendant corporation of "startup" costs upon termination of the Plaintiff's employment with the defendant corporation.

Defendant does contend on appeal, however, that the

---

[1]The trial court reduced the amount of the judgment to $5,586.48 because of defendant's payment of a post–termination insurance premium, and also awarded plaintiff an additional judgment as his distributive share of a pension trust. Neither item is contested on appeal.

[2]RCW 49.48.030 provides:

"In any action in which any person is successful in recovering judgment for wages or salary owed to him, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: *Provided, however,* That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary."

$3,000 monthly payments to Dr. Brown for the last 3 months of 1977 were not "salary" (as found by the trial court), but, rather, "were an advance against future earnings in contemplation of entering into a written commission–type contract . . ." and that this $9,000 should have been categorized as a "draw" on his total compensation for the full year he was employed from October 1, 1977, to September 30, 1978.

We turn, first, to defendant's cross appeal on this issue. The trial court divided Dr. Brown's employment into two different periods, each under a different set of terms of employment: From October through December 1977,[3] he simply was paid a salary of $3,000 per month; from January through September 1978 his terms of employment were governed by the written agreement. We find substantial evidence in the record from Dr. Brown's testimony to support the trial court's finding that the $9,000 paid in 1977 was "salary."[4] Accordingly, it will be accepted as fact.

This fact becomes significant when we consider the primary issue on appeal, *i.e.,* whether plaintiff is entitled to have reasonable attorney's fees assessed against defendant pursuant to RCW 49.48.030. Preliminarily, however, we dispose of defendant's contention that Dr. Brown's challenge to denial of attorney's fees, his only issue presented on appeal, is not an appealable issue. In support of this contention, defendant cites *Judges of Everett Dist. Court v. Hurd,* 85 Wn.2d 329, 534 P.2d 1025 (1975) and

---

[3]Defendant's counterclaim alleged in part:
"Prior to October 1, 1977, the CORPORATION and BROWN entered into an oral employment agreement which governed their relationship as employer and employee from October 1, 1977, until December 31, 1977."

[4]We also find substantial evidence in the record to support the trial court's finding that defendant failed to prove that Dr. Brown received funds belonging to defendant which were not turned over to the corporation. Dr. Brown received $150 as a consultation fee from a firm of attorneys for his opinion on the advisability of pursuing a potential medical malpractice action. The record reflects that this service was requested of and rendered by Dr. Brown in his capacity as an assistant professor of obstetrics and gynecology at the University of Washington.

*Snohomish Cy. v. Boettcher,* 66 Wn.2d 351, 402 P.2d 505 (1965). We distinguished these cases in *Harold Meyer Drug v. Hurd,* 23 Wn. App. 683, 598 P.2d 404 (1979), when we permitted an appeal challenging solely the amount of attorney's fees awarded pursuant to RCW 4.84.290. In *Hurd* we authorized the appeal because Ms. Hurd was not seeking attorney's fees as part of the costs of that action. Similarly, any award of attorney's fees sought under RCW 49.48.030 is not sought as part of the costs of this action; rather, Dr. Brown seeks attorney's fees as additional damages for defendant's failure to comply with RCW 49.48.010.[5] In *Hurd* we declined to read the word "costs" into RCW 4.84.290. Similarly, in the case at bench, we decline to read the word "costs" into RCW 49.48.030.

---

[5]RCW 49.48.010 provides:

"When any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him on account of his employment shall be paid to him at the end of the established pay period: *Provided, however,* That this paragraph shall not apply when workers are engaged in an employment that normally involves working for several employers in the same industry interchangeably, and the several employers or some of them cooperate to establish a plan for the weekly payment of wages at a central place or places and in accordance with a unified schedule of paydays providing for at least one payday each week; but this subsection shall not apply to any such plan until ten days after notice of their intention to set up such a plan shall have been given to the director of labor and industries by the employers who cooperate to establish the plan; and having once been established, no such plan can be abandoned except after notice of their intention to abandon such plan has been given to the director of labor and industries by the employers intending to abandon the plan: *Provided, further,* That the duty to pay an employee forthwith shall not apply if the labor–management agreement under which the employee has been employed provides otherwise.

"It shall be unlawful for any employer to withhold or divert any portion of an employee's wages unless the deduction is:

"(1) Required by state or federal law; or

"(2) Specifically agreed upon orally or in writing by the employee and employer; or

"(3) For medical, surgical or hospital care or service, pursuant to any rule or regulation: *Provided, however,* That the deduction is openly, clearly and in due course recorded in the employer's books and records.

"Paragraph three of this section shall not be construed to affect the right of any employer or former employer to sue upon or collect any debt owed to said employer or former employer by his employees or former employees."

Plaintiff's appeal presents an appealable issue, even though his only issue pertains to the trial court's denial of reasonable attorney's fees.

Defendant contends the trial court did not err by denying attorney's fees in the case at bench because (1) the statute, RCW 49.48.030, is not applicable to this kind of employment agreement; (2) if applicable, fees should be denied because of the statute's express exception that the statute "shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary"; and (3) the statute is unconstitutional.

As to the first of these contentions, both parties direct our attention to *Schoonover v. Carpet World, Inc.*, 91 Wn.2d 173, 588 P.2d 729 (1978). *Schoonover* did direct recovery of reasonable attorney's fees under RCW 49.48.030 when an employment agreement had been established and the employee proved that a commission had been earned under that agreement. Nevertheless, the question of whether a "commission" constitutes "wages or salary" as used in RCW 49.48.030 does not appear to have been challenged in *Schoonover*. Although Dr. Brown's contract of employment with defendant corporation did not expressly entitle him to a "commission", rather, he was entitled to "additional compensation" pursuant to a formula based upon the gross receipts to the corporation that he generated by his professional services during each year of the term of his employment.

In one of its conclusions of law, the trial court quite clearly enunciated its reason why reasonable attorney's fees were denied:

> Plaintiff is not entitled to recover reasonable attorneys' fees under the provisions of RCW 49.48.030 because it does not apply to a salary determined by reference to a percentage of cash receipts determined at the end of a yearly period, nor does it apply to a deferred compensation arrangement, but only to a rate of pay set by reference to hours, days, or months worked, and only when such wages are unlawfully withheld; . . .

■ Thus, the trial court read into RCW 49.48.030 a provision that it applied "only to a rate of pay set by reference to hours, days, or months worked." In other words, the trial court appears to have concluded that the statute applied only when the employee's wage or salary was measured by an hourly, daily, or monthly predetermined pay scale. We find no such limitation to the statute's applicability. Indeed, from legislative history of the act which last amended RCW 49.48.010 and .030 in 1971, we find an indication to the contrary.

These two statutes were amended as sections 1 and 3 of Laws of 1971, 1st Ex. Sess., ch. 55, by passage of Senate Bill 261. Reference to House Journal, 42d Legislature (1971) indicates at page 1246 that the first sentence of section 1 of SB 261 (RCW 49.48.010) initially provided:

> When any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him on account of his employment shall be paid to him *forthwith*.

(Italics ours.)

The House of Representatives adopted (and the Senate subsequently accepted) an amendment striking the word "forthwith" and inserted the words "at the end of the established pay period." Hence, it appears that the Legislature was aware of a variety of circumstances under which an employee's pay period is determined.

Dr. Brown's pay period, under terms of his employment agreement, was yearly. While still employed by the corporation, he had no right to demand a prespecified salary until the end of each pay period. Once he terminated that employment, the amount of that salary was determinable by applying the amount of gross receipts the corporation received as a result of his services during that pay period to the agreed formula. Under the statute, however, the corporation was not duty bound to pay him that determinable salary until "the end of the established pay period." This his employer failed to do, and he was forced to sue to collect the determinable balance due on his contract. We see

no reason to deny him the benefit of the statute.

Defendant corporation insists, however, that it did comply with the statute's mandate and did not unlawfully withhold any wages due. This argument is premised on the trial stipulation in which both parties agreed that "the gross amount of receipts collected for the first three–quarters of 1978 [was] in the amount of $138,475.75." Defendant's contention would be valid had it not insisted at trial—as it still does on appeal—that Dr. Brown's pay period under the employment agreement began October 1, 1977, and ended September 30, 1978. It has insisted that the $9,000 paid to Dr. Brown for the last 3 months of 1977 should be included as a draw on his annual salary. The $9,000 paid in 1977 was not part of the compensation payable under the 1978 agreement. Thus, we hold that defendant's trial stipulation did not comply with the exception in RCW 49.48.030, i.e., that the statute is inapplicable "if the amount of recovery is . . . equal to the amount admitted by the employer to be owing for said wages or salary."

Defendant contends, further, that under this interpretation of these two statutes it has been denied the right effectively to pursue a wholly unrelated counterclaim for a debt owed by Dr. Brown. Defendant was not denied that right; it was permitted to counterclaim for the "start–up" costs which it alleged Dr. Brown owed. The trial court denied defendant any recovery on that theory by finding that neither the written nor the oral agreement provided for repayment of "start–up" costs upon termination of Dr. Brown's employment. Defendant's failure to assign error to that finding precludes it from pursuing the issue here.

Defendant's insistence that the $9,000 paid in 1977 was a draw in contemplation of the written agreement ultimately executed underlies its argument that the employment agreement was operational for the entire period of Dr. Brown's employment. The trial court held that the parties were bound by the clear written provision that the agreement commenced January 1, 1978. We cannot and do not hold otherwise.

■ Finally, defendant contends for the first time on appeal that RCW 49.48.030 unconstitutionally deprives defendant of equal protection of the law in violation of guaranties provided by both the federal and state constitutions. As a general rule, issues raised for the first time on appeal will not be considered by the appellate court. *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 617 P.2d 704 (1980). Nevertheless, defendant's argument is premised upon a contention that the statute unconstitutionally creates two classes of employers: One in which there is an obligation to pay attorney's fees; the other in which there is no obligation to pay attorney's fees. Such classification violates no equal protection guaranties because the classes are rationally related to the legitimate legislative goal of protecting employers from nuisance litigation when they admit owing the amount of wages or salary that an employee actually recovers.

Judgment is affirmed on defendant's cross appeal. Judgment is reversed on plaintiff's appeal, and this cause is remanded with direction to fix the amount of reasonable attorney's fees at trial and on appeal.

WORSWICK, A.C.J., and REED, J., concur.