[No. 19215-9-I. Division One. June 20, 1988.]

ALICE HAYES, ET AL, *Appellants*, v. DENIS TRULOCK, ET AL, *Respondents*.

*Harry L. Johnsen III, Deborra E. Garrett,* and *Raas, Johnsen, Garrett & Stuen,* for appellants.

*William G. Knudsen,* for respondents.

SCHOLFIELD, C.J.—Alice Hayes, Karen Chase, Beth Gates, Denise Hansen and Sandra Spurling appeal the trial court's order awarding them damages in their wrongful discharge suit against their former employers, Denis and Wendy Trulock.

FACTS

Hayes, Chase, Gates, Hansen and Spurling were employed at the Jackpot Food Mart in Bellingham. At all times pertinent to the litigation, Gates was on medical leave and did not perform work in the store. The Trulocks owned and operated the Jackpot Food Mart as a sole proprietorship at all times material to this case, prior to December 1, 1985.

While the Trulocks were on vacation in August 1985, Spurling managed the store and authorized overtime hours for both herself and other employees, including Hayes, Chase and Hansen. The trial court found the scheduling of the overtime hours was within Spurling's authority, and reasonable in view of the needs of the store during August 1985.

Upon his return from vacation, Denis Trulock refused to pay the employees their overtime wages for August 1985. On September 5 or 6, 1985, several of the employees consulted with the Washington Department of Labor and Industries (DLI) concerning their right to receive overtime pay.

After the employees told Trulock about their consultation with DLI, he discharged them. The trial court found that the reason for the discharge was that Trulock was angry with the employees for complaining to DLI about his failure to pay overtime.

In the same week that the employees were terminated from their jobs, the Trulocks changed the business hours of the Jackpot store from 24 hours per day, 7 days a week, to 18 hours per day, 7 days a week. The trial court found that this change was made for a legitimate business purpose. Effective December 1, 1985, the Trulocks sold the Jackpot Food Mart to Betty Mortenson. The trial court found that the sale was for legitimate business purposes and was not made to enable the Trulocks to escape potential liability to their former employees.

The former employees filed suit on October 10, 1985, alleging that the Trulocks wrongfully discharged them from their jobs, in violation of RCW 49.46.100(2).[1] The employees further alleged as their second cause of action that the Trulocks failed to pay them for their overtime hours.

In an attempt to settle the suit, the Trulocks tendered payment of the overtime wages to DLI for at least three of the four discharged employees claiming overtime for August 1985. However, the tender of payment was refused.

The trial court concluded that the Trulocks' discharge of the employees violated RCW 49.46.100. The trial court ordered payment of the August overtime wages to the three former employees who had earned them—Hayes, Hansen and Chase.

The trial court awarded back pay to Spurling, Hayes, Chase, and Hansen from the time of their discharge until December 1, 1985, the date of the sale of the store. However, the trial court reduced each employee's back pay award by 25 percent, to reflect the shortened hours each would have worked under the store's new 18-hour day, as opposed to the former 24-hour operation. In addition, the trial court reduced each employee's back pay award by the amount of unemployment compensation each received and also reduced Hansen's award by the amount in wages and disability benefits she had received from her new job.

The trial court ordered the Trulocks to hold the four employees harmless from any Department of Employment Security claim for reimbursement and to pay reasonable costs and fees incurred in defense of any such claim.

---

[1]RCW 49.46.100(2) provides:

"Any employer who discharges or in any other manner discriminates against any employee because such employee has made any complaint to his employer, to the director, or his authorized representatives that he has not been paid wages in accordance with the provisions of this chapter, or that the employer has violated any provision of this chapter, or because such employee has caused to be instituted or is about to cause to be instituted any proceeding under or related to this chapter, or because such employee has testified or is about to testify in any such proceeding shall be deemed in violation of this chapter and shall, upon conviction therefor, be guilty of a gross misdemeanor."

However, the trial court determined that Gates, who was on medical leave during all times material to this case, was not an employee within the meaning of RCW Title 49, and thus she was not awarded any damages. Because reinstatement was not possible due to the sale of the store to new owners, the trial court awarded 1 month's front pay to Hayes, Spurling, Hansen and Chase.

Although the employees requested attorney's fees based on RCW 49.48.030,[2] the trial court determined that the statute did not apply to the claims before it. However, the trial court did determine that the employees' reasonable attorney's fees would be $6,500.

This appeal timely followed.

## WRONGFUL DISCHARGE

In Washington, employment for an indefinite term may be terminated at the will of either party, with or without just cause. *Parker v. United Airlines, Inc.,* 32 Wn. App. 722, 649 P.2d 181 (1982); 56 C.J.S. *Master and Servant* § 31 (1948). The employment–at–will doctrine is a common law doctrine developed from a treatise on master and servant written in the last century. *See* H. Wood, *Master and Servant* 134 (2d ed. 1886). The Washington Supreme Court followed the Wood treatise in 1928 as follows:

> The law of the case seems to be well settled, that a contract such as this constitutes an employment for an indefinite period and that such a contract may be abandoned by either party at will without incurring any liability therefor.

*Davidson v. Mackall–Paine Veneer Co.,* 149 Wash. 685, 688, 271 P. 879 (1928).

---

[2]RCW 49.48.030 provides:

"In any action in which any person is successful in recovering judgment for wages or salary owed to him, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: *Provided, however,* That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary."

In a recent case, the Washington Supreme Court modified the employment–at–will doctrine, holding that the doctrine is subject to certain exceptions based on an employment agreement, applicable employer policy or regulations, public policy, or the fact that the employee gave consideration in addition to the contemplated services. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 233, 685 P.2d 1081 (1984).

■ One effect of the court's holding in *St. Regis* was to create a cause of action for wrongful discharge in the state of Washington. In the case before us, the basis for the trial court's finding of wrongful discharge concerns the public policy exception to the employment–at–will doctrine. The trial court's finding of wrongful discharge has not been appealed, and thus is a verity. *See Sherwood v. Bellevue Dodge, Inc.*, 35 Wn. App. 741, 669 P.2d 1258, 676 P.2d 557 (1983).

## Back Pay

As previously noted, the tort of wrongful discharge is new in Washington State. The posture of the *St. Regis* case was that of summary judgment, and the case was sent back for trial without dealing with the issue of damages. Thus, this court must look to federal cases and cases from other jurisdictions for persuasive authority.

Most jurisdictions that have ruled on the issue of damages recoverable for wrongful discharge of an at–will employee have taken the position that the employee is entitled to recover back pay, which represents the amount the employee would have earned from the time of discharge until he finds new employment or is reinstated. Annot., 44 A.L.R.4th 1131 (1986). The general purpose of a damage award in a wrongful discharge case is to make the employee whole. *Cf. Albemarle Paper Co. v. Moody*, 422 U.S. 405, 45 L. Ed. 2d 280, 95 S. Ct. 2362 (1975) (analysis of damage award in employer–employee discrimination suit). The injured party is to be placed in the situation he would have occupied if the wrongful conduct had not been committed.

*Albemarle,* at 418–19 (quoting *Wicker v. Hoppock,* 73 U.S. (6 Wall.) 94, 99, 18 L. Ed. 752 (1867)).

In *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093 (8th Cir. 1982), the trial court awarded a discharged employee damages in an age discrimination in employment suit. The trial court awarded back pay from the time of discharge until the date of trial, despite the closure of the particular plant where the employee had worked subsequent to his discharge. On appeal, the company argued that the back pay award should have been limited to the time between the employee's discharge and the closure of the plant. The *Gibson* court held that the evidence presented reasonably supported the employee's claim that he would have been transferred to another facility after the plant closure. *Gibson,* at 1098. However, because the trial court's instructions did not permit the jury to make a finding on that issue, the case was remanded for further proceedings.

In *Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847 (2d Cir. 1985), plaintiffs were pilots and flight engineers who were terminated from their positions in contravention of a provision in the company's operations manual. The defendant company argued *inter alia* that the calculation of damages should not include any time period after its subsidiary, International Air Bahama (IAB), with whom the terminated employees were employed, ceased passenger operations. The court found this argument unpersuasive because IAB employees continued to staff cargo flights in a joint venture with Air India and Seaboard World Airways, Inc., as had been done prior to the closure of the subsidiary. *Gorrill,* at 854.

However, these cases can be distinguished from the circumstances now before us. In both *Gibson* and *Gorrill,* the employer continued to operate its business, and sufficient evidence was presented to the trial court that the employees would have continued their employment beyond the closure of certain operations. Here, however, because the Trulocks sold the convenience store, they ceased to operate

the business. The trial court expressly found that the Trulocks' motivation in selling the convenience store was not to release them from any liability in this lawsuit.

In the absence of any finding of bad faith, it was within the trial court's discretion to limit the back pay award to the date of sale of the store. The proper amount of damages in a particular case is a question for the trier of fact, and a damage award will generally not be overturned on appeal when it is within the range of evidence. *Island Air, Inc. v. LaBar,* 18 Wn. App. 129, 566 P.2d 972 (1977).

## FRONT PAY

It is within the trial court's discretion to award damages for loss of future earnings, known as front pay, representing the difference between what the employee would have earned from his former employer and the amount, if any, he could expect to earn from his new employer. Annot., 44 A.L.R.4th 1147 n.29 (1986).

In *Smith v. Atlas Offshore Boat Serv.,* 552 F. Supp. 128 (S.D. Miss. 1982), the trial court determined that Smith was wrongfully terminated by his employer, Atlas. The *Smith* court held that Smith was entitled to compensatory damages based on (1) his expenses of finding new employment, (2) lost earnings while seeking new employment, (3) lost future earnings if his new job paid less than the job from which he was wrongfully terminated, and (4) damages for mental anguish. *Smith,* at 129. The *Smith* court stated that lost future earnings should be paid for a reasonably certain period of time that does not exceed the likely duration of the terminated employment. *Smith,* at 130.

In *Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945 (10th Cir. 1980), an employment discrimination case, the trial court found employment discrimination and wrongful discharge and awarded both front and back pay. With regard to the front pay awarded, reinstatement was not possible because of the hostile environment at the plaintiff's former company. Instead, front pay for a period of 5 years was awarded. The *Fitzgerald* court noted that the

trial court has broad discretion to fashion a remedy, and since the trial court's finding that reinstatement was inappropriate was supported, no error was committed by this award. *Fitzgerald,* at 957.

The employees here argue that an appropriate award would have been 2 years' front pay. However, the record on appeal fails to show any evidence presented by them to support such an award. Although it is known that the employees who were hired to replace the plaintiffs continued in their employment following the sale of the business, it is unknown what the duration of their employment has been.

In addition, the plaintiffs did not provide the trial court with any evidence showing the average duration of employment of convenience store employees. In the absence of any such evidence, this court cannot say that the trial court below abused its discretion. *See Island Air, Inc. v. LaBar, supra.*

### UNEMPLOYMENT COMPENSATION

Benefits received by a plaintiff from a source collateral to the tortfeasor or contract breacher may not be used to reduce a defendant's liability for damages. This collateral source rule holds true even if the benefits are payable to the plaintiff because of the defendant's actionable conduct. *See* D. Dobbs, *Remedies* 185 (1973).

It has been held in some jurisdictions that a trial court may reduce a back pay award by the amount of unemployment compensation received by the individual during the relevant time period. Annot., 44 A.L.R.4th 1131 (1986). However, in *NLRB v. Gullett Gin Co.,* 340 U.S. 361, 95 L. Ed. 337, 71 S. Ct. 337 (1951), the United States Supreme Court held that to effectuate the policy of the National Labor Relations Act, the NLRB has the power to refuse to deduct from a back pay award the unemployment compensation paid. The Court stated that such a refusal to reduce an award does not make the employees more than

whole. The Court's reasoning was that since no consideration is given to collateral losses when making a back pay award, no consideration need be given to collateral benefits received. *Gullett,* at 364.

In *Smith v. Atlas Offshore Boat Serv., supra,* the court held that a reduction for unemployment compensation received would be inappropriate under the facts before it, since unemployment benefits received are collateral and are not in place of an award by the court for compensatory damages resulting from the employee's wrongful discharge. *Smith,* at 130.

Applying the collateral source rule to the facts before us, we hold that the trial court erred in reducing the back pay award here by the amount of unemployment compensation received by each employee. The Trulocks should not benefit from the fact that the employees had accrued enough working time to be eligible for unemployment compensation. To do so would reward the Trulocks for their wrongful conduct.

Because we hold that the setoff for unemployment compensation was in error, we also find no need for the Trulocks to hold the employees harmless from any employment security claims.

### GATES' EMPLOYMENT STATUS

RCW 49.46.100(2) prohibits an employer from discriminating or discharging any employee who makes a complaint to DLI over a wage payment dispute. RCW 49.46.010(5) defines "employee" as "any individual employed by an employer".

In practical terms, the question of whether Gates was an employee under the statute need not be addressed by this court. The purpose of the trial court's conclusion that Gates was not an employee was for the determination of damages to be paid. Because Gates was on medical leave during all relevant times, she was not eligible for compensation for lost wages. A determination by this court that Gates was in fact an employee would provide no different result with

respect to her recovery. Therefore, the trial court error, if any, is harmless.

## ATTORNEY'S FEES

RCW 49.48.030 reads as follows:

Attorney's fee in action on wages—Exception. In any action in which any person is successful in recovering judgment for wages or salary owed to him, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: *Provided, however,* That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary.

In *Brown v. Suburban Obstetrics & Gynecology, P.S.,* 35 Wn. App. 880, 670 P.2d 1077 (1983), a physician sought wages due under an agreement in which he was to be paid a percentage of the gross receipts that his medical services generated. Under the scheduled compensation, the physician was entitled to approximately $5,700 more than his employers paid him for a particular 9-month period. After terminating his employment, the physician sued to recover the balance due, and also sought reasonable attorney's fees, pursuant to RCW 49.48.030. The trial court entered a judgment in the physician's favor, but denied attorney's fees, on the ground that the statute did not apply to alternative employment agreements.

On appeal, the *Brown* court determined that RCW 49.48.030 was applicable and that the statute was not limited in its application only to "a rate of pay set by reference to hours, days, or months worked". *Brown,* at 886.

In *Hanson v. Tacoma,* 105 Wn.2d 864, 719 P.2d 104 (1986), a civil service employee appealed his suspensions from work on the ground that they violated a municipal personnel rule limiting suspensions to 30 days per calendar year. During the period of his suspensions, Hanson worked for the City of Tacoma in a lower paying capacity. The trial court awarded Hanson back pay, calculated to be the differential between his regular salary and that paid to him

during his suspension, and also awarded him attorney's fees and costs pursuant to RCW 49.48.030.

On appeal, the *Hanson* court stated as follows:

RCW 49.48.030 provides reasonable attorney's fees *in any action* in which a person is successful in recovering judgment for wages or salary owed.

Upon the trial court's review, Hanson recovered wages for a greater number of days lost because of his suspension, thus modifying the Civil Service Board's ruling. He has satisfied the standard required under RCW 49.48.030 and, thus, should be accorded his reasonable attorney fees.

*Hanson*, at 872.

In determining whether an attorney's fees award is appropriate here, this court must determine the appropriate construction of the phrase "wages or salary owed." Although RCW 49.48 contains no definition of "wage," a related statute, RCW 49.46.010(2) states in pertinent part that "'[w]age' means compensation due to an employee by reason of employment . . ." We construe this broad definition to include back pay and front pay awards, especially in view of the fact that RCW 49.48.030 is a remedial statute.

In *Hanson*, the claim was not for wages owed for work performed, but rather, was a claim for back pay. Thus, the *Hanson* court has construed the phrase "wages or salary owed" to include situations in which an award is made not of wages actually worked for, but rather, for moneys due "by reason of employment". The trial court's denial of attorney's fees is reversed and this case is remanded for entry of an award of $6,500 for attorney's fees at the trial court level. Hayes has also filed with this court an affidavit for attorney's fees, pursuant to RAP 18.1, in the amount of $3,816. Based on RCW 49.48.030, we award attorney's fees in that amount on appeal.

Judgment affirmed with respect to back pay and front pay awards, and the determination of Gates' status as an employee. Reversed and remanded with respect to the set-off for unemployment compensation and the award of attorney's fees. The trial court is instructed to order the

Trulocks to pay attorney's fees in the appropriate amounts, and to pay the back pay awards without benefit of the set-off for unemployment compensation.

SWANSON and WEBSTER, JJ., concur.

Review denied by Supreme Court October 4, 1988.