[No. 9119–8–III.   Division Three.   June 8, 1989.]

NACHES VALLEY SCHOOL DISTRICT NO. JT3, *Respondent,* v. ROBERT A. CRUZEN, ET AL, *Respondents,* NACHES VALLEY EDUCATION ASSOCIATION, *Appellant.*

*Catherine O'Toole,* for appellant.

*Lonny Suko, Lyon, Beaulaurier, Weigand, Suko & Gustafson, Blaine Gibson,* and *McArdle, Dohn, Talbott & Simpson,* for respondents.

THOMPSON, C.J.—The Naches Valley Education Association appeals a judgment denying arbitration of a dispute it

has with the Naches Valley School District JT3. The dispute concerns the right of certificated employees to cash in sick leave upon retirement under the terms of a prior collective bargaining agreement of the parties. The District cross–appeals from a summary judgment entered in favor of Robert A. Cruzen, Ernest Hinze, and Richard E. Smith, all of whom are teachers who have retired from positions with the District. The District challenges the trial court's conclusions that the three teachers are entitled (1) to cash for their sick leave accumulated as of August 31, 1983, and (2) to an award of attorney fees against the District pursuant to RCW 49.48.030, the wage statute. We reverse the judgment denying arbitration and affirm the summary judgment.

The 1980–83 collective bargaining agreement (CBA) of the parties provided:

> Section 16. Leaves.
> (a) Sick leave:
>
> . . .
>
> Employees may cash in unused sick leave days above an accumulation of sixty (60) days at the ratio of one full day's pay for four (4) accumulated sick leave days. The Employee may either cash in up to twelve (12) days per year on January 1 of each school year or cash in the entire accumulation at retirement.[1]

The parties' 1983–85 CBA did not contain a sick leave cashout provision. It stated: "This Agreement shall supersede any rules, regulations, policies, resolutions or practices of the District which shall be contrary to its terms."

In 1986, teachers Cruzen, Hinze and Smith retired from the District. By letter dated February 17, 1987, these three asked the District to pay them for their unused sick leave

---

[1]RCW 28A.58.097, enacted by Laws of 1980, ch. 182, § 5, had mandated the establishment of such a policy. The Legislature repealed that statute by Laws of 1983, ch. 275, § 4, and enacted RCW 28A.58.096, which provides only that school districts *may* establish a sick leave cashout policy.

accumulated prior to September 1983. The District denied this request on March 4. On April 1, 1987, the Association filed a grievance with the District on behalf of the three teachers. On April 14, the District notified the Association the grievance had not been timely filed. The District also took the position that the grievance procedure was inapplicable because the current CBA did not provide for sick leave buyout. In May, the Association requested arbitration of the dispute under step 3 of the Grievance Procedure of the 1980–83 CBA. The District then filed this action in superior court asking for an order precluding arbitration and denying the claims of the teachers.

In September 1987, the Association amended the grievance to add the names of George Pickard and Charlotte Spooner, two District teachers who planned to retire in 1988 and 1990, respectively.

All parties moved for summary judgment. The Association asked the court to order arbitration on behalf of all who were members of the bargaining unit when the grievance was filed and who worked under the 1980–83 contract. It relied on the following clause in article 4 of that agreement:

> Continuity of Grievance. Notwithstanding the expiration of this Agreement, any claim or grievance arising hereunder may be processed through the grievance procedure until resolution.

The trial court held as a matter of law that the District was not required to arbitrate the dispute, but that it was liable to the three teachers for their claims in the following amounts:

| | |
|---|---|
| Robert A. Cruzen: | $7,302.86 |
| Ernest Hinze: | $6,897.91 |
| Richard E. Smith: | $8,676.66 |

The court further ordered an award of reasonable attorney fees to the teachers in the amount of $7,400. Summary judgment was entered accordingly.

## THE APPEAL

The Association contends the grievance procedure set forth in the 1980–83 contract is available to process disputes concerning the interpretation of that agreement even after the agreement expired.

In *Nolde Bros., Inc. v. Local 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 51 L. Ed. 2d 300, 97 S. Ct. 1067, *reh'g denied,* 430 U.S. 988 (1977), the issue was whether "a party to a collective–bargaining contract may be required to arbitrate a contractual dispute over severance pay pursuant to the arbitration clause of that agreement even though the dispute, although governed by the contract, arises after its termination". *Nolde,* at 244. In arguing that *Nolde*'s displaced employees were entitled to severance pay, the Union claimed that the severance wages provided for in the CBA were in the nature of "accrued" or "vested" rights. *Nolde,* 97 S. Ct. at 1070. Since the Union's claim hinged on the interpretation ultimately given the contract clause providing for severance pay, the Court at 97 S. Ct. 1071 held the dispute clearly arose *under* that contract even though it occurred *after* expiration of the CBA.

Nevertheless, the employer contended the arbitration clause expired with the contract. The Supreme Court disagreed, relying on *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 555, 11 L. Ed. 2d 898, 84 S. Ct. 909, 917 (1964). There, the Court determined that the arbitration clause survived termination of the contract when the dispute was over an obligation arguably created by the expired agreement. *John Wiley,* 84 S. Ct. at 917. The employer in *Nolde* attempted to distinguish *John Wiley* on the ground that the union there first sought arbitration while the agreement was still in effect. *Nolde,* 97 S. Ct. at 1072. However, the Court held the distinction was not material. *Nolde.*

Here, the Association's claim also hinges on the interpretation given the 1980–83 CBA; *i.e.,* did the sick leave buyout provision of that contract create a right to compensation in employees who met the conditions for buyout set

forth there? Since the claim arises under the contract, *Nolde* requires arbitration under the grievance procedure of the contract unless there is some reason to distinguish the two cases. The District argues that the "Continuity of Grievance" clause of the CBA, quoted above, and the Association's alleged delay in asserting its claim are factors that distinguish this case from *Nolde*.

According to the District, the clear implication of the "Continuity of Grievance" clause is that grievances only survive the expiration of the contract if they were initiated *before* the agreement expired. The District reasons (1) "continuity" means "uninterrupted connection", (2) a grievance can only be interrupted by contract termination if it arose *before* contract termination, (3) therefore, the clause, by implication, excludes postcontract grievances. We are not persuaded. It can just as easily be argued that the clause provides for the continuance of the grievance procedure for resolution of any disputes arising under the contract. "[P]resumptions favoring arbitrability must be negated expressly or by clear implication". *Nolde,* at 255. *See also Council of Cy. & City Employees v. Spokane Cy.,* 32 Wn. App. 422, 425, 647 P.2d 1058, *review denied,* 98 Wn.2d 1002 (1982). *Cf. Rose v. Erickson,* 106 Wn.2d 420, 424, 721 P.2d 969 (1986) (arbitration is strongly favored). The presumption in favor of arbitration is not negated by the "Continuity of Grievance" clause.

The District also cites footnote 8 of *Nolde,* at 255, which states: "[W]e need not speculate as to the arbitrability of post–termination contractual claims which, unlike the one presently before us, are not asserted within a reasonable time after the contract's expiration". The District maintains that the Association should have asserted the grievance in 1983. But until the District had denied the three teachers' request for sick leave buyout in 1987, there was nothing for the Association to grieve. In these circumstances, we find the Association brought the grievance within a reasonable time. *Cf. Bakenhus v. Seattle,* 48 Wn.2d 695, 703, 296 P.2d 536 (1956). (Until plaintiff had

established his right to receive a pension by fulfilling the conditions, he could show no injury to himself by subsequent legislative changes and consequently could not complain.)

The District asserts two additional reasons for avoiding arbitration:

1. Contract time limits:

The District argues that the Association did not adhere to the time limits of article 4 of the CBA which states: "A grievance must be filed within twenty (20) school days of the occurrence of which the grievant complains." In the District's view, the "occurrence" here was the three teachers' retirements in 1986. We disagree. The teachers did not request cashout of their sick leave until February 1987. The District denied that request on March 4, 1987. The Association timely filed the grievance on April 1, within 20 school days of the District's denial of the teachers' claim.

The District cites *Pasco Educ. Ass'n v. Pasco Sch. Dist. 1,* 27 Wn. App. 147, 615 P.2d 1357, 622 P.2d 915 (1980), *abrogated by Haynes v. Seattle Sch. Dist. 1,* 111 Wn.2d 250, 758 P.2d 7 (1988), but that decision is not helpful here. In *Pasco,* the teacher did not file a grievance until 1978, even though "his 1971–72 contract . . . *on its face* failed to credit him with the year he was on probation . . .", the occurrence which he was grieving. (Italics ours.) *Pasco,* at 149. Consequently, the court held the teacher was "not entitled to retroactive relief through arbitration with respect to any contract executed prior to February 26, 1978 . . ." *Pasco,* at 151. The three teachers in this action did not know of the District's interpretation of the CBA until they retired and requested their sick leave cashout.

2. CR 19—necessary party:

The District argues that the Association is a necessary party under CR 19[2] because disposition of the claims of

---

[2]CR 19 provides:

"(a) . . . A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be

Cruzen, Hinze, and Smith in the Association's absence would leave the District subject to a substantial risk of incurring inconsistent obligations.

CR 19 is not available to the District to compel the Association's participation in this litigation. The only reason the parties are in court is that the District brought this action seeking to avoid arbitration and, at the same time, requested the court to rule on the substantive issue. The Association has maintained throughout the action that the dispute is subject to arbitration. If the District in fact incurs "inconsistent obligations", it will be as a result of its own decision to litigate this matter. The District cannot use CR 19 as a bootstrap to avoid arbitration.

The court should have granted the Association's motion for partial summary judgment "directing Plaintiff to arbitrate this dispute, in regard to District employees who both (a) were members of the bargaining unit on March 4, 1987 and (b) worked under the 1980–1983 Collective Bargaining Agreement".

█ Although we have decided the matter at issue is subject to arbitration, we conclude that Cruzen, Hinze, and Smith waived arbitration with respect to their individual claims. *See Geo. V. Nolte & Co. v. Pieler Constr. Co.,* 54 Wn.2d 30, 34, 337 P.2d 710 (1959), which held arbitration can be waived expressly or impliedly; if waiver is accomplished by implication, it is an issue to be determined by the courts. *See also Kinsey v. Bradley,* 53 Wn. App. 167, 765 P.2d 1329 (1989); *Lake Wash. Sch. Dist. 414 v. Mobile Modules Northwest, Inc.,* 28 Wn. App. 59, 63, 621 P.2d 791 (1980). Specifically, the three teachers moved for summary judgment on the issue of the District's liability after the

---

joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (A) as a practical matter impair or impede his ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

Association had already moved for summary judgment on the arbitration issue. The teachers' motion indicates an intent by them to proceed with the action rather than seek arbitration. *See* Annot., *Defendant's Participation in Action as Waiver of Right to Arbitration of Dispute Involved Therein,* 98 A.L.R.3d 767, § 7[a], at 789 (1980). We therefore address the District's cross appeal from the judgment awarding the three teachers their sick leave buyout and attorney fees.

## THE CROSS APPEAL

The District contends the right to sick leave cashout expired with the 1980–83 contract. Since the right allegedly arose out of the 1980–83 CBA and was terminated by the 1983–1985 CBA, contract construction rules apply. When the terms of a contract are not ambiguous, the contract's meaning is to be determined from its language alone without recourse to other aids. *Frank v. Day's, Inc.,* 13 Wn. App. 401, 404, 535 P.2d 479 (1975).

We hold that the language of the 1980–83 CBA is unambiguous and that the District agreed to pay the teachers for sick leave accrued as of that contract period, even if they retired after the expiration of the contract. The CBA, quoted above, stated that a teacher could cash in his accumulated unused sick leave "at retirement". "Retirement", as used in the agreement, is not limited to any specified period. As mentioned during oral argument, the obvious purpose of the provision was to save the District the cost of hiring a substitute by encouraging teachers to report for work on days they otherwise might take sick leave because of minor illnesses. At the close of the 1980–83 contract, the teachers had performed under this agreement, accrued sick leave, and gained a right to compensation from the District which they chose to defer until retirement.

The next question is whether the teachers waived their existing right to deferred compensation when they ratified the 1983–85 CBA. Waiver is the voluntary and intentional relinquishment of a known right. The District

does not cite any language in the 1983–85 CBA which would support a finding the teachers waived their then-existing right to compensation. Indeed, the CBA is silent on this subject. The provision in the 1983–85 agreement that it superseded "rules, regulations, policies, resolutions or practices of the District . . . contrary to its terms" means only that the sick leave buyout policy did not continue in effect; it does not mean that the teachers voluntarily and intentionally relinquished their right to compensation which they had earned under the prior agreement. Again, we find no ambiguity. Thus, we need not consider the District's affidavits regarding the parties' intent in 1980 and 1983. *Frank.*

By analogy, *Johnson v. Aberdeen,* 14 Wn. App. 545, 547, 544 P.2d 93 (1975) provides support for our decision. There, the court construed an ordinance which provided for sick leave buyout upon retirement. The court held the ordinance created a right to deferred compensation in the employee who met the specified conditions. Therefore, repeal of the ordinance did not affect any right earned by an employee prior to the repeal. *Johnson,* at 547 (citing *Bakenhus v. Seattle,* 48 Wn.2d 695, 296 P.2d 536 (1956)). Likewise, the mere elimination of the sick leave buyout policy from the 1983–85 contract did not forfeit buyout rights the teachers had accrued as of August 31, 1983. Cases such as *Tondevold v. Blaine Sch. Dist. 503,* 91 Wn.2d 632, 590 P.2d 1268 (1979) are distinguishable. They do not involve rights to compensation which the employee has earned but chosen to defer.

Although *Johnson* involved an ordinance and not a CBA, this distinction is not material for our purposes. In both cases, rights were created in the employee. We note the District's argument that an employee in a CBA might agree to bargain away an earned right which a public employer could not unilaterally remove by repeal of a statute. However, we have held that the 1983–85 CBA does not contain such an agreement by the employees.

Finally, the District contends the court erred when it awarded the teachers their attorney fees pursuant to the wage statute. RCW 49.48.030. According to the District, the statute does not apply to sick leave cashout or to state employees.

RCW 49.48.030 states, *inter alia*:

> In any action in which any person is successful in recovering judgment for wages or salary owed to him, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: . . .

Is reimbursement for sick leave a form of wages? The teachers argue "Yes" and cite (1) *Webster's Twentieth Century Dictionary* (Unabridged), which defines wages as "compensation paid to a hired person for services of any kind", and (2) *Johnson v. Aberdeen, supra* at 547, which held that sick leave cashout is a form of deferred compensation.

In *Brown v. Suburban Obstetrics & Gynecology, P.S.*, 35 Wn. App. 880, 670 P.2d 1077 (1983), the court held that application of the wage statute was not limited to circumstances in which the employee's wage was measured by an hourly, daily, or monthly predetermined pay scale. There, the court awarded attorney fees under RCW 49.48.030 for recovery of compensation which the defendant corporation had agreed to pay the plaintiff doctor, based upon a percentage of the amount of gross receipts the corporation received as a result of his services during the year.

In *Hayes v. Trulock*, 51 Wn. App. 795, 806, 755 P.2d 830 (1988), the court held that back pay and future earnings awarded to an employee wrongfully terminated constitute wages for purposes of RCW 49.48.030. The court reasoned at page 806:

> In determining whether an attorney's fees award is appropriate here, this court must determine the appropriate construction of the phrase "wages or salary owed." Although RCW 49.48 contains no definition of "wage," a related statute, RCW 49.46.010(2) states in pertinent part that "'[w]age' means compensation due to an

employee by reason of employment . . . ." We construe this broad definition to include back pay and front pay awards, especially in view of the fact that RCW 49.48.030 is a remedial statute.[3]

We hold that sick leave cashout represents wages under RCW 49.48.030. It constitutes an entitlement to compensation for services performed. Further, a remedial statute should be liberally construed to effect its purpose. *Southeastern Wash. Bldg. & Constr. Trades Coun. v. Department of Labor & Indus.*, 91 Wn.2d 41, 45, 586 P.2d 486 (1978); *Hayes*. The purpose of the statute is served here by awarding the teachers attorney fees incurred by them in pursuing their claim against the District.

Nor are we persuaded by the District's argument that RCW 49.48.030 does not apply to state employees. The District relies on RCW 49.48.080, enacted by Laws of 1935, ch. 96, § 5, which provides in part:

> Nothing in RCW 49.48.040 through 49.48.080 shall apply to the payment of wages . . . of employees . . . [of] any county, . . . city, . . . or other municipal corporation. Nor shall anything herein apply to employees . . . employed by the state . . .

The "herein" obviously refers to sections .040–.080, the other portions of Title 49.48 enacted in 1935 as part of Laws of 1935, ch. 96. It does not refer to RCW 49.48.030.

We affirm the judgment of the Superior Court awarding the teachers their attorney fees. We also award the teachers attorney fees of $3,926.25 on appeal. *See Richter v. Trimberger*, 50 Wn. App. 780, 786, 750 P.2d 1279 (1988). We decline to apply a lodestar to that amount.

Thus, having found the court erroneously denied arbitration, but that the teachers waived arbitration proceedings

---

[3]Contrast *Bradford v. Data Processing Joint Bd.*, 106 Wn.2d 368, 375, 722 P.2d 95 (1986), in which the court held the wage statute did not apply. There, the employees voted to remove themselves from the federal social security system, then they sued their employer for the amount of the contributions it had agreed to make to social security in their behalf for the term of the collective bargaining agreement. The court held the employer's contributions were not wages or salary for purposes of RCW 49.48.030.

by presenting their claim to superior court, the judgment denying arbitration is reversed; the remaining judgment is affirmed.

GREEN and MUNSON, JJ., concur.